DORIS J. DAMOUDE, APPELLEE, V. GENE E. DAMOUDE, APPELLANT.

429 N.W.2d 368

Filed September 23, 1988.   No. 86-897.

Douglas Pauley, of Conway, Connolly and Pauley, P.C., for appellant.

O. William VonSeggern, of Grimminger & VonSeggern, for appellee.

BOSLAUGH, CAPORALE, and GRANT, JJ., and BUCKLEY, D.J., and COLWELL, D.J., Retired.

BUCKLEY, D.J.

This is a dissolution of marriage appeal. The only error assigned by appellant, Gene E. DaMoude, is the trial court's division of the marital property and assignment of the debts.

The parties were married in 1977. No children were born as a result of the marriage. Gene has been in the well-drilling business since before the marriage.

The trial court dissolved the marriage and divided the parties' assets. Gene was awarded the family home in Grand Island, a certificate of deposit at Cairo State Bank in the face amount of $10,000, all personal property in the family home except certain items, and his well-drilling business, including all business equipment. Appellee, Doris J. DaMoude, was awarded a 143-acre farm in Howard County, together with all personal property located thereon, including irrigation equipment and a 1980 Oldsmobile. The court also awarded Doris, "as a further equitable division of the parties' marital assets," a judgment in the sum of $27,500.

The decree did not address any debts of the parties, did not determine whether the assets were marital or nonmarital, and did not make findings as to any valuations of the assets awarded.

In dissolution of marriage appeals, we review the case de novo on the record and reach independent conclusions without reference to the conclusions or judgment of the trial court. Neb. Rev. Stat. § 25-1925 (Reissue 1985); *Bryan v. Bryan*, 222 Neb. 180, 382 N.W.2d 603 (1986).

The parties' disputes center on (1) whether the farm awarded to Doris is a marital asset, (2) the value of Gene's well-drilling business equipment, and (3) whether rental income from the farm was used to reduce Gene's bank loans for his business equipment.

There is no question that the family home and the CD at the Cairo State Bank, both awarded to Gene, are nonmarital assets. Gene owned and occupied the house before the marriage. During the marriage Gene inherited from his father the CD and the proceeds from the sale of a property on Lake Maloney. He used those proceeds to pay off the mortgage loan on the house. Doris claims no interest in the house or the CD.

When awarding property in a dissolution of marriage, property acquired by one of the parties through gift or inheritance ordinarily is set off to the individual receiving the inheritance or gift and is not considered a part of the marital estate. *Sullivan v. Sullivan*, 223 Neb. 273, 388 N.W.2d 516 (1986).

The farm, however, brings into play an exception to the foregoing general rule, namely, that where both spouses have contributed to improvements or operation of the property received by inheritance or gift during the term of the marriage, or where a spouse, not owning the property prior to the marriage or receiving the inheritance or gift, has significantly cared for such property during the marriage. *Sullivan v. Sullivan, supra.*

During the marriage, in 1979, Doris and her two sisters each inherited a one-third interest in their parents' family farm at Dannebrog. Doris then purchased the other two-thirds interest from her sisters for approximately $120,000. Payment was made with cash Doris inherited, cash from the sale of a home that she owned prior to the marriage, and money borrowed from the Metropolitan Life Insurance Company. Both Gene and Doris executed the note to Metropolitan Life. The farm was titled to both parties.

Doris admitted that Gene performed services and put equipment in the farm that enhanced its value "[s]ome" and that some of the loans Gene took out at the Overland National Bank went into the operation of the farm. She offered no evidence of the value of the services or equipment.

Gene testified:

> [W]e dug in a reuse line from a reuse pit back, installed the inlet and outlet tubes to reuse pit. Put in electric control panel, completely automatic, tail water pump to bring it back up and across the bench and stuff. We rebuilt irrigation pipe, built all the offsets and special fittings for rebuilt irrigation pipe. Bought a lot of irrigation pipe, additional over what she has stated. . . .
>
> . . . .
>
> . . . We also drilled several wells and traded like for the reuse pit and leveling four or five acres of land and

floating all the benches and stuff. I drilled an irrigation well and set a pump . . . .

He valued his services and the equipment installed at approximately $30,000. The only evidence of the value of the entire farm at the time of trial was $60,000.

We conclude that Gene made significant contributions to the improvements on the farm and therefore it should be included in the marital estate.

Doris contends that the farm rental income was used by Gene to pay his loans with Overland National Bank which were used to buy his well-drilling equipment. She produced four checks drawn on the parties' checking account, payable to Overland National Bank, totaling approximately $42,000. Gene testified that the money went "[i]n living, food, clothing for her children and me and my child, and operating the business, heating the home, electricity, the farm, payments on the farm." Doris had no records to indicate how the loan proceeds were used, but admitted that some of the proceeds were used for the farm.

Gene submitted a property statement listing business equipment owned prior to the marriage at $15,000 and equipment acquired after the marriage at $14,600. Doris offered a financial statement Gene gave to the Overland National Bank in March 1986, which, he said in answer to an interrogatory two months before trial, contained a list of assets of his well-drilling business. The values stated there total $64,100, of which $30,500 relates to equipment owned prior to the marriage. We place a value of Gene's business equipment acquired during the marriage at $33,600.

, At the time of trial, the farm mortgage had a balance of $30,800, and Gene's loans with Overland National Bank totaled $20,369. He also had a loan on a Peterbilt truck at Five Points Bank for $3,000.

We agree in part with the trial court's distribution of the parties' property. Setting aside the nonmarital assets, Doris received the farm with a gross value of $60,000, less the mortgage loan, which she should assume and pay, leaving a net value of $29,200. She also received household goods at $2,500, the 1980 Oldsmobile valued at $1,100, and equipment at the farm valued at $5,600. The net value of property awarded to

her is $38,400. Gene received his well-drilling business, including equipment valued at $33,600, accounts receivable of $5,000, cash on hand of $500, and inventory at $7,500, less accounts payable of $1,000, for a net value of $45,600. He also should be awarded a 1979 Chevrolet Monza valued at $400, and should assume and pay the loans to Overland National Bank, totaling $20,369, and the debt to Five Points Bank of $3,000. The net value of property awarded to him is $22,631.

Counsel for appellant, in his brief and in oral argument, asks only that the $27,500 judgment awarded appellee as further equitable division of the parties' marital assets be eliminated. The judgment clearly is intended as a property settlement, not as alimony. Considering our determination as to the division of property, it cannot be justified, and we conclude that the trial court abused its discretion in awarding it and that it should be deleted.

The decree of the district court, as modified, is affirmed.

AFFIRMED AS MODIFIED.