WILLIAM R. AND THELMA C. BROWN, APPELLANTS, V. JAMES R. AND MARY J. BORLAND, APPELLEES.

432 N.W.2d 13

Filed November 23, 1988.    No. 86-823.

Gregory M. Schatz for appellants.

Clayton Byam and Joseph C. Byam, of Byam & Byam, for appellees.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

FAHRNBRUCH, J.

To enforce the judgment awarded them on account of intentional tortious conduct of the defendant James R. Borland, plaintiffs, William R. and Thelma C. Brown, sued to set aside a quitclaim deed from Borland to his wife, Mary J. Borland.

The Sarpy County District Court refused to set aside the deed

as a fraudulent conveyance to defeat creditors. We reverse.

The Borlands were married in 1978 and purchased their home on land contract as joint tenants with rights of survivorship in 1980.

In January 1985, James Borland was convicted of a felony and sentenced to prison for 3 to 5 years. On March 28, 1985, the Browns, victims of crimes committed by James Borland and two others, filed a tort lawsuit against the trio for damages.

On July 26, 1985, Mary Borland filed for a legal separation from James. On August 2, 1985, the Borlands entered into a "Child Custody and Property Settlement Agreement." In part, the agreement provided that James would convey his interest in the family home to Mary. She, in turn, agreed to pay both parties' outstanding debts, to waive future support for herself, and to forgo pursuing child support until James was suitably employed or until a court ordered that support be paid. There was no mention in the property settlement of any antecedent debt owed by the husband to the wife.

On October 18, 1985, the district court for Sarpy County granted the Borlands a legal separation. The court made no finding as to alimony, child custody, visitation, or the parties' property settlement agreement. The next day, James Borland executed a quitclaim deed conveying his interest in the family home to Mary Borland. This deed was recorded October 25, 1985.

Trial on Browns' civil action against James Borland and two others commenced on October 28, 1985. After trial, the jury awarded the Browns $17,500.

In their petition, the Browns claim they have attempted to collect their judgment, but have been unable to do so. They allege James Borland's interest in the Borland home is the only property available to pay the judgment. The Browns brought this action seeking to have the conveyance of James Borland's interest in the home set aside as fraudulent. If the conveyance is set aside, it would permit the Browns to levy execution on James Borland's interest in the home. The trial judge held the conveyance was made in good faith by Mary and James Borland.

A creditor's action to declare a conveyance fraudulent

invokes the equity jurisdiction of a trial court. See, *Gifford-Hill & Co. v. Stoller*, 221 Neb. 757, 380 N.W.2d 625 (1986); *First Nat. Bank v. First Cadco Corp.*, 189 Neb. 553, 203 N.W.2d 770 (1973). On appeal to this court, an equity action is reviewed de novo on the record, subject to the rule that where the credible evidence is in conflict, the Supreme Court may consider the fact that the trial court observed the witnesses and accepted one version of the facts over another. *J. J. Schaefer Livestock Hauling v. Gretna St. Bank*, 229 Neb. 580, 428 N.W.2d 185 (1988); *Fisbeck v. Scherbarth, Inc.*, 229 Neb. 453, 428 N.W.2d 141 (1988).

Distilled, the Browns' five assignments of error complain that James Borland quitclaimed his interest in the family home to his wife, Mary, without her paying fair consideration, and therefore the conveyance was fraudulent.

The trial court found that Mary Borland paid the majority of the $10,000 downpayment and all of the installment payments, taxes, and insurance on the couple's home and that James' interest in the house was less than $3,500. The trial court made no specific finding as to whether Mary's payments and assumption of indebtedness constituted fair consideration from Mary to James. However, implicit in the trial court's general holding for the defendants and against the plaintiffs is a finding either that Mary gave fair consideration or that the plaintiffs failed to meet their burden of proving by clear and convincing evidence that Mary did not give fair consideration. See, *Gifford-Hill & Co. v. Stoller, supra*; *Gelbard v. Esses*, 96 A.D.2d 573, 465 N.Y.S.2d 264 (1983).

Nebraska's Uniform Fraudulent Conveyance Act, Neb. Rev. Stat. §§ 36-601 to 36-613 (Reissue 1984), enacted in 1980, together with Nebraska's case law, is controlling. This is the first case requiring this court's interpretation of the uniform act. Section 36-604 provides, "Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his or her actual intent if the conveyance is made or the obligation is incurred without a fair consideration."

Under the uniform act, a creditor is "a person having any claim, whether matured or unmatured, liquidated or

unliquidated, absolute, fixed, or contingent." § 36-601. The conveyance from James to Mary Borland was made after James committed the criminal acts against the Browns. When the conveyance was made, the Browns had a claim against James Borland and were, therefore, creditors of James at that time. See, *Jahner v. Jacob*, 252 N.W.2d 1 (N.D. 1977); *Churchill v Palmer*, 57 Mich. App. 210, 226 N.W.2d 60 (1970); *Ashbaugh v. Sauer*, 268 Mich. 467, 256 N.W. 486 (1934). This is true even though the claim has not been reduced to a judgment. See, *Jahner v. Jacob, supra; Churchill v Palmer, supra*.

Mary Borland's testimony established that her husband was rendered insolvent by the conveyance. Therefore, next to be examined is whether Mary gave fair consideration for the conveyance. Section 36-603 provides:

Fair consideration is given for property, or obligation,

(a) When in exchange for such property, or obligation, as a fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is satisfied, or

(b) When such property, or obligation is received in good faith to secure a present advance or antecedent debt in amount not disproportionately small as compared with the value of the property, or obligation obtained.

Under the old conveyances to defraud creditors act, every conveyance made with intent to defraud creditors was void. Case law interpretation provided that a conveyance made in good faith and for adequate consideration was not made with intent to defraud. Section 36-603 of the uniform act also requires adequate consideration and good faith dealings to prove a conveyance was not fraudulent. Therefore, we see no reason why past case law rules on good faith and adequate consideration should not remain in effect.

The same is true for case law regarding "badges of fraud" and the presumptions arising therefrom. See *Gifford-Hill & Co. v. Stoller*, 221 Neb. 757, 380 N.W.2d 625 (1986). The former act did not speak to when a conveyance was presumed fraudulent. It is through case law that the badges of fraud and presumptions were developed. The current uniform act, in § 36-307, preserves distinction of "intent presumed at law" from "intent to defraud." Therefore, we find that existing rules

on badges of fraud and their presumptions are still in effect under the uniform act.

Because the transfer of the Borland home was between spouses, at trial the Browns, as creditors, were entitled to a presumption that the conveyance was fraudulent. See *Gifford-Hill & Co. v. Stoller, supra.* Once that presumption was established, the burden of proving that the transfer was made for fair consideration shifted to the defendants. *Creason v. Wells,* 158 Neb. 78, 62 N.W.2d 327 (1954). If the defendants established that James Borland's interest in the property was conveyed for fair consideration, the burden would then shift to the Browns to prove by clear and convincing evidence that the transfer was not made in good faith. *Gifford-Hill, supra.*

The question then is whether the Borlands presented sufficient evidence that the conveyance was supported by fair consideration, thereby overcoming the presumption. We find they did not.

This court has held that when a husband and wife take title to a property as joint tenants, even though one pays all the consideration therefor, a gift is presumed to be made by the spouse furnishing the consideration to the other who did not. This presumption is rebuttable. *Marco v. Marco,* 196 Neb. 313, 242 N.W.2d 867 (1976). See, also, *Hein v. W. T. Rawleigh Co.,* 167 Neb. 176, 92 N.W.2d 185 (1958); *Hoover v. Haller,* 146 Neb. 697, 21 N.W.2d 450 (1946). The evidence is not sufficient to rebut the presumption that the downpayment and monthly payments made by Mary were, in part, gifts to James. Those payments cannot be considered as consideration for the quitclaim deed.

The trial judge found that Mary assumed (1) the couple's indebtedness under the land contract for their home, (2) medical and dental expenses for herself and the couple's minor child, and (3) a Visa bill. Mary's assumption of these debts is not fair consideration for James' interest in the property.

Mary's assumption of the remaining indebtedness on the couple's home is not consideration because, as a party to the land contract, Mary was already liable for the debt. Nor is Mary's payment of the medical and dental bills consideration. Even though James may have been primarily liable for these

bills, because the expenses were for necessities of life, Mary was liable in the event James did not pay them. See Neb. Rev. Stat. § 42-201 (Reissue 1984).

In regard to the Visa bill totaling about $1,300, there is no evidence in the record whether Mary was already either contractually liable for this bill or liable under § 42-201 because the items charged were necessities of life. Even if it is assumed that Mary was not liable for the Visa bill prior to her property settlement agreement, the amount of the bill is not sufficient consideration for James' interest in the property.

Delivery of the quitclaim deed made James insolvent, and he had no immediate prospect of employment at the time of the conveyance due to his prison term. Mary could not rely on him for support for herself or the minor child of the parties. There is scant likelihood that James could or would have paid the bills Mary assumed and for which she was secondarily liable.

Mary also argues that her waiver of future alimony and agreement not to pursue child support is fair consideration for the conveyance. Considering James' past work history, his insolvency, and his prison sentence, and considering that Mary owned and operated a liquor store, there is little chance, if any, that a court would grant Mary Borland alimony. For the same reasons, the court most likely would grant only future child support. Therefore, Mary's waiver of future alimony and her agreement not to pursue future child support cannot be considered as "fair consideration" for the conveyance. Moreover, since the agreement related only to future support for Mary and the minor child, that support could not be considered an antecedent debt as required under § 36-603.

The Borlands failed to prove that fair consideration was paid by Mary to James. The evidence was insufficient to overcome the presumption that the conveyance was fraudulent as to existing creditors.

The decision of the trial court must be reversed and the cause remanded, and the trial court is instructed to set aside James Borland's quitclaim deed to his wife, Mary Borland.

REVERSED AND REMANDED WITH DIRECTIONS.