RENET M. GERARD-LEY, APPELLEE AND CROSS-APPELLANT, V. JONATHAN H. LEY, APPELLANT AND CROSS-APPELLEE.

558 N.W.2d 63

Filed December 31, 1996.   No. A-95-760.

Hal W. Anderson and Amie C. Martinez, of Anderson, Creager & Wittstruck, P.C., for appellant.

R. Kent Radke for appellee.

MILLER-LERMAN, Chief Judge, and HANNON and IRWIN, Judges.

IRWIN, Judge.

## I. INTRODUCTION

Jonathan H. Ley appeals from the district court order dissolving his marriage to Renet M. Gerard-Ley. On appeal, Jonathan challenges the district court's inclusion of the marital residence and an automobile in the marital estate, alleging that the property was purchased with proceeds from his inheritance. Renet cross-appeals, alleging the district court erred in refusing to award her nominal alimony. For the reasons stated herein, we affirm.

## II. BACKGROUND

Jonathan and Renet were married on October 27, 1984. Three children were born of the marriage: Gerard, who was 9 years old at the time of trial; Justin, who was 6 years old; and Lauren, who was 5 years old. Throughout the marriage, Renet was employed as an elementary school teacher in the Lincoln Public Schools. Throughout the marriage, Jonathan was not regularly employed, although he did contribute financially to the marriage with income from stock dividends and interest.

Renet filed a petition for dissolution of the marriage on November 12, 1992. By stipulation of the parties, trial was bifurcated so that custody, visitation, and child support issues

were tried separately from property distribution issues. Renet was awarded custody of the three children, and Jonathan was ordered to pay child support in accordance with the child support guidelines. For purposes of this appeal, the portion of the trial regarding property distribution issues is the only part that needs to be discussed in detail.

The primary dispute concerning the property distribution was whether the parties' residence and one of the parties' vehicles, a Nissan Quest van, should have been included in the marital estate. According to the testimony at trial, the parties purchased a home in October 1984, where they lived until they bought the "Campbell property" in June 1990. The Campbell property was purchased for approximately $191,000. The Campbell property is the subject of dispute on appeal. The parties sold their original home and applied a portion of the sale proceeds toward the Campbell property. Additionally, the parties sold a property which Renet brought into the marriage and applied a portion of the sale proceeds toward the Campbell property. The remainder of the purchase price was financed through a bank loan. Title to the Campbell property was taken by Jonathan and Renet as joint tenants, with a right of survivorship.

In January 1992, Jonathan sold some shares of bank stock which he had received from his parents through inheritance and through gifts. In July, Jonathan used some of the proceeds from the stock to pay off the mortgage on the Campbell property. After the initial mortgage was paid off, various other smaller loans were secured with another mortgage on the Campbell property.

In June 1992, the parties purchased a Toyota 4-Runner. Jonathan testified at trial that the 4-Runner was also purchased with proceeds from his stock sale. In July 1993, the 4-Runner was traded in and the van was purchased. According to the testimony at trial, after the allowance for the trade-in of the 4-Runner, an additional $4,000 loan was required to pay for the van. Both Jonathan and Renet testified at trial that Renet had been in exclusive possession of the van and that she used the vehicle to transport herself to and from work and to transport the children to and from school and day care.

In August 1992, Jonathan created a family trust with the remaining proceeds from his stock sale. The trust agreement was designed to provide Jonathan with income, while preserving the corpus of the trust for the parties' children. One provision in the trust agreement dealt with a residential asset. The trust agreement provided that the trust may, at some time, own a residence occupied by Jonathan and Renet. The agreement additionally provided:

> In the event of the dissolution of marriage of Jon and Renet Ley, each of them shall have and enjoy an equal one-half interest in the equity in their current residence at 6325 Campbell, Lincoln NE [Campbell property]. In the event of the death of either of them during their marriage, the surviving spouse shall succeed to the full ownership of the residence. Upon the death of the second of them to die, in the event the first of them dies while they are married, the second to die shall convey the residence owned by him or her to this trust by deed or testamentary instrument.

Renet signed the trust agreement containing the above-quoted language. According to the testimony at trial, Renet insisted that the above-quoted language be added to the agreement.

At trial, Renet requested that the court allow her and the children to remain living in the Campbell property. Renet argued that her understanding of the trust agreement was that she would get one-half of the equity in the home if she and Jonathan divorced. Additionally, Renet requested that she be awarded the van, because it was the only vehicle in her possession. Finally, Renet testified that she suffered from various health problems which could, at some point in the future, interfere with her ability to work. As a result, Renet requested the court to award a nominal amount of $1 per year in alimony.

At trial, Jonathan requested that the court set aside both the Campbell property and the van as being nonmarital assets. Jonathan argued that the property was readily identifiable and traceable to his inheritance proceeds. Additionally, Jonathan testified that he was not aware of any health problems which would interfere with Renet's ability to work. As a result, Jonathan requested that the court deny Renet's request for alimony.

On May 31, 1995, the court issued a decree dissolving the marriage. The court found that Jonathan had intended to make a gift of a one-half interest in the Campbell property by including the above-quoted language in the trust agreement. As a result, the court included the Campbell property in the marital estate and awarded the home to Renet. The court also included the van in the marital estate. The court awarded approximately $171,000 worth of assets to Renet, including the Campbell property, and approximately $25,000 worth of assets to Jonathan. To balance the property distribution, the court ordered Renet to pay Jonathan approximately $74,000 in a 5-year property settlement, to be paid in annual installments of $14,500 for 4 years and approximately $16,000 in the fifth year. The court denied Renet's request for alimony.

On June 7, 1995, Jonathan filed a motion for new trial. The court denied Jonathan's motion on June 16. This appeal timely followed.

## III. ASSIGNMENTS OF ERROR

On appeal, Jonathan assigns two errors. First, Jonathan asserts that the district court erred in including the Campbell property in the marital estate. Second, Jonathan asserts that the district court erred in including the van in the marital estate.

On cross-appeal, Renet assigns as error the district court's refusal of her request for nominal alimony.

## IV. STANDARD OF REVIEW

An appellate court's review in an action for dissolution of marriage is de novo on the record to determine whether there has been an abuse of discretion by the trial judge. *Venter v. Venter*, 249 Neb. 712, 545 N.W.2d 431 (1996); *Mathis v. Mathis*, 4 Neb. App. 307, 542 N.W.2d 711 (1996). The division of the marital estate in a dissolution case is initially left to the discretion of the trial court and will be reviewed by an appellate court de novo on the record and affirmed absent an abuse of discretion. *Mellor v. Mellor*, 235 Neb. 361, 455 N.W.2d 177 (1990).

In a review de novo on the record, an appellate court reappraises the evidence as presented by the record and reaches its

own independent conclusions with respect to the issues. *Thiltges v. Thiltges*, 247 Neb. 371, 527 N.W.2d 853 (1995); *Mathis v. Mathis, supra.* If the evidence as presented by the record is in conflict, an appellate court considers, and may give weight to, the fact that the trial court had the opportunity to hear and observe the witnesses and accept one version of the facts rather than another. *Id.*

## V. ANALYSIS

### 1. APPEAL

On appeal, Jonathan has assigned as error the trial court's inclusion of the Campbell property and the van in the marital estate. Jonathan argues with respect to both that the property is readily identifiable and traceable to the proceeds from the sale of his inherited bank stock. Because the property is traceable to his inheritance, Jonathan argues that both items should be set aside and considered nonmarital property.

#### (a) Campbell Property

According to the testimony at trial, when Jonathan and Renet were married, Renet owned a house which was rented out during the first 6 years of the marriage. Additionally, the parties purchased their first marital home on or about October 15, 1984. The parties purchased the Campbell property on or about June 5, 1990. The funds to pay for the Campbell property initially came from three sources: (1) The parties sold the rental property which Renet brought into the marriage and applied a portion of the proceeds toward the Campbell property, (2) the parties sold their first marital home and applied a portion of the proceeds toward the Campbell property, and (3) the parties secured a loan for the remainder of the purchase price.

There was a great deal of testimony at trial concerning various loans which were taken out for remodeling and improvements on the Campbell property and concerning how the loans were consolidated and "rolled over" into one another. The progression of these loans is unimportant to our analysis, except to note that approximately $140,000 worth of notes was still outstanding on or about July 1, 1992. On July 1, Jonathan received the proceeds from the sale of his inherited bank stock, in an

amount slightly under $1,750,000, and on that date, he used some of these proceeds to pay off the outstanding notes on the Campbell property.

■ During the course of Jonathan's testimony at trial, the parties stipulated that "the Campbell property is a joint-tenancy deed between [Jonathan and Renet] with rights of survivorship." The Nebraska Supreme Court has held that "when a husband and wife take title to a property as joint tenants, even though one pays all the consideration therefor, a gift is presumed to be made by the spouse furnishing the consideration to the other . . . ." *Brown v. Borland*, 230 Neb. 391, 395, 432 N.W.2d 13, 17 (1988). See, also, *Marco v. Marco*, 196 Neb. 313, 242 N.W.2d 867 (1976); *Hein v. W. T. Rawleigh Co.*, 167 Neb. 176, 92 N.W.2d 185 (1958); *Peterson v. Massey*, 155 Neb. 829, 53 N.W.2d 912 (1952). This presumption is a rebuttable presumption. *Brown v. Borland, supra; Marco v. Marco, supra.*

The testimony at trial did not, in any way, rebut the above presumption concerning Jonathan and Renet taking title to the Campbell property in joint tenancy. The primary dispute in the testimony at trial regarding the Campbell property concerned the language in the trust agreement. The parties disputed the meaning and effect of the clause in the trust agreement that "[i]n the event of the dissolution of marriage of Jon and Renet Ley, each of them shall have and enjoy an equal one-half interest in the equity in their current residence." We need not determine what, if any, legal effect this clause may have, except to note that it does not provide rebuttal of the presumption that Jonathan intended to gift an equal share of the Campbell property to Renet when the parties took title to the property in joint tenancy.

■ Jonathan urges us to decide this case on the basis of the Nebraska Supreme Court's holding in *Van Newkirk v. Van Newkirk*, 212 Neb. 730, 325 N.W.2d 832 (1982). In *Van Newkirk*, the Supreme Court held that when distributing property in a dissolution proceeding, property acquired by one of the parties through either gift or inheritance should ordinarily be set off to the individual who received the gift or inheritance and not be considered a part of the marital estate. The Supreme Court noted an exception exists where both of the spouses have con-

tributed to the improvement or operation of the property. *Van Newkirk v. Van Newkirk, supra.*

The general rule, as well as the exception, set out by the Nebraska Supreme Court in *Van Newkirk* has been applied in numerous cases since. See, e.g., *Preston v. Preston*, 241 Neb. 181, 486 N.W.2d 902 (1992); *DaMoude v. DaMoude*, 229 Neb. 851, 429 N.W.2d 368 (1988); *Buche v. Buche*, 228 Neb. 624, 423 N.W.2d 488 (1988); *Sullivan v. Sullivan*, 223 Neb. 273, 388 N.W.2d 516 (1986); *Applegate v. Applegate*, 219 Neb. 532, 365 N.W.2d 394 (1985); *Ross v. Ross*, 219 Neb. 528, 364 N.W.2d 508 (1985); *Shald v. Shald*, 216 Neb. 897, 346 N.W.2d 406 (1984).

Our holding today is not inconsistent with *Van Newkirk* or its progeny. None of the above-cited cases reveals a similar factual situation, where one of the parties receives property through inheritance or gift, sells or "cashes in" that inherited or gifted property, and then uses the proceeds to purchase property and take title as joint tenants with the party's spouse. In that regard, we believe the Nebraska Supreme Court's holding in *Grace v. Grace*, 221 Neb. 695, 380 N.W.2d 280 (1986), to be helpful.

In *Grace*, the Nebraska Supreme Court recognized the general rule and exception set forth in *Van Newkirk*, but recognized that "[t]here are other considerations." *Grace*, 221 Neb. at 699, 380 N.W.2d at 284. The Supreme Court specifically held that "[t]he *Van Newkirk* rule itself does not purport to be an ironclad, rigid rule for all circumstances." *Id.* Relying on the earlier case *Matlock v. Matlock*, 205 Neb. 357, 287 N.W.2d 690 (1980), the Supreme Court iterated that all pertinent facts must be considered in reaching a just and equitable award and that the court must regard the circumstances of the parties, the duration of the marriage, the contributions to the marriage by each party, including the contributions to the care and education of the children. *Grace v. Grace, supra.* The Supreme Court held that " '[h]ow property, inherited by a party before or during the marriage, will be considered in determining division of property . . . must depend upon the facts of the particular case and the equities involved.' " *Id.* at 700, 380 N.W.2d at 284.

Much like the present case, *Grace* involved a husband's inheritance of stock. The husband inherited stock in a family

business, which the wife did not contribute to as contemplated by the exception in *Van Newkirk*. In *Grace*, the trial court refused to award any of the stock or its value to the wife because it had been inherited by the husband. Unlike the present case, the stock was not sold and the proceeds reinvested in the family home. Nonetheless, on appeal the Nebraska Supreme Court, considering the equities of the case, awarded the wife a share of the value of the stock because the parties did not have significant other property to be divided. Similarly, in the present case, the parties did not acquire significant assets other than the house, and that factor, along with the other equities of the case, requires that Renet receive an interest in the home.

The Nebraska Supreme Court has repeatedly stated that the ultimate test for determining an appropriate division of marital property is one of fairness and reasonableness as determined by the facts of each case. *Thiltges v. Thiltges*, 247 Neb. 371, 527 N.W.2d 853 (1995); *Jirkovsky v. Jirkovsky*, 247 Neb. 141, 525 N.W.2d 615 (1995); *Preston v. Preston, supra*. Additionally, the Supreme Court has held that although " 'the source of funds brought into a marriage is a consideration in the division of property, it is not an absolute.' " *Grace,* 221 Neb. at 701, 380 N.W.2d at 285.

In the present case, although Jonathan utilized proceeds from the sale of his inherited stock to pay off the debt on the Campbell property, because he took title to the property along with Renet as joint tenants, it is appropriate to presume that he intended to make a gift to Renet of a one-half interest in the property. Recognizing that this presumption is rebuttable, we find no testimony or evidence in the record to rebut the presumption. Jonathan's testimony reflects that he did not intend to make a gift of the property through the language in the trust agreement, but he never addressed the fact that title to the property had already been taken in joint tenancy. The district court did not abuse its discretion in including the Campbell property in the marital estate. This assigned error is without merit.

### (b) Nissan Van

Jonathan asserts that the district court should have set aside the van as his nonmarital property because the van was paid for

by proceeds from the sale of his inherited bank stock. As noted above, if a husband and wife take title to property jointly, even if one of the parties provided all of the consideration for the purchase of the property, the law in Nebraska creates a rebuttable presumption that the party furnishing the consideration intended to make a gift to the other party. See, *Brown v. Borland*, 230 Neb. 391, 432 N.W.2d 13 (1988); *Marco v. Marco*, 196 Neb. 313, 242 N.W.2d 867 (1976); *Hein v. W. T. Rawleigh Co.*, 167 Neb. 176, 92 N.W.2d 185 (1958); *Peterson v. Massey*, 155 Neb. 829, 53 N.W.2d 912 (1952). Renet testified at trial that the van was titled in both Jonathan's name and her own. Jonathan provided no evidence to rebut this testimony or the presumption that arises because of it. In accordance with our analysis above concerning the Campbell property, we similarly hold that the district court did not abuse its discretion by including the van in the marital estate.

We note that the appellant's praecipe for transcript included a request for the dissolution decree. However, the decree contained in the transcript prepared for us by the clerk of the district court did not contain page 11. The absence of this was problematic not only for the obvious reason that we did not have an accurate copy of the decree, but also because page 11 contained the judge's award of the van to Renet. In order to reach a fully informed resolution of the issues in this case, we were obligated to specifically request page 11, which was subsequently provided by the clerk of the court. This is an example of why care must be taken in the preparation of the transcript by the clerk of the court. This assigned error is without merit.

## 2. Cross-Appeal

On cross-appeal, Renet asserts that the district court erred in rejecting her request for a nominal award of $1 per year alimony. Renet sought the nominal award because of alleged health problems which Renet testified could, at some date in the future, interfere with her ability to work and provide for herself and the children. Jonathan testified that he was unaware of any health problems which would interfere with Renet's ability to work.

■ The Nebraska Supreme Court has held that in determining whether alimony should be awarded, in what amount it should be awarded, and over what period of time it should be awarded, the ultimate criterion is one of reasonableness. *Thiltges v. Thiltges, supra.* Regarding the payment of alimony, Neb. Rev. Stat. § 42-365 (Reissue 1993) provides in part:

> When dissolution of a marriage is decreed, the court may order payment of such alimony by one party to the other and division of property as may be reasonable, having regard for the circumstances of the parties, duration of the marriage, a history of the contributions to the marriage by each party, including contributions to the care and education of the children, and interruption of personal careers or educational opportunities, and the ability of the supported party to engage in gainful employment without interfering with the interests of any minor children in the custody of such party.

A decision on whether to award alimony must be made on the particular facts and equities of each individual case, and the court must consider all of the facts and equities, in addition to those specifically enumerated in § 42-365. *Kelly v. Kelly*, 246 Neb. 55, 516 N.W.2d 612 (1994).

Although we recognize that the Nebraska Supreme Court has approved of nominal alimony awards in other cases, see, *Kouth v. Kouth*, 238 Neb. 230, 469 N.W.2d 791 (1991); *Hamm v. Hamm*, 228 Neb. 294, 422 N.W.2d 336 (1988); and *Dobesh .v. Dobesh*, 216 Neb. 196, 342 N.W.2d 669 (1984), upon a consideration of all the facts and equities in this case, including the property distribution, the duration of the marriage, and the circumstances of the parties, we cannot say that the district court abused its discretion by denying the alimony request. This assigned error is without merit.

## VI. CONCLUSION

Because we find that the district court did not abuse its discretion by including the Campbell property and the van in the marital estate or by denying the request for alimony, we affirm.

AFFIRMED.