HUGH MCDURMETT CONNEALY, APPELLEE, V.
MARY ALICE CONNEALY, APPELLANT.

578 N.W. 2d 912

Filed May 26, 1998.   No. A-97-492.

Patrick T. Riskowski, of Gallup & Schaefer, and Jon S. Okun for appellant.

Daniel A. Smith, of Stanek & Smith, for appellee.

MILLER-LERMAN, Chief Judge, and HANNON and IRWIN, Judges.

IRWIN, Judge.

## I. INTRODUCTION

Mary Alice Connealy appeals from a decree of dissolution entered by the district court dissolving her marriage to Hugh McDurmett Connealy and distributing the parties' assets and debts. On appeal, Mary challenges the court's distribution of the marital estate, specifically the court's failure to award her any share of the alleged increase in value of Hugh's house, and the court's division of debts. Because we conclude that Mary did not present sufficient evidence to demonstrate the value of her contribution to the house, which was a premarital asset of Hugh's, and because the court did not abuse its discretion in the division of debts, we affirm.

## II. BACKGROUND

Hugh and Mary were married on August 12, 1992. Hugh brought a significant amount of money and some property into

the marriage, including the house in which the parties lived after their marriage. No children were born of this marriage, and at the time of the trial, Hugh was 77 years old and Mary was 62 years old.

In June 1993, Hugh filed for dissolution, and a decree was entered in November 1993. After nearly 1 year of separation, the parties reconciled and jointly filed in May 1994 to have the dissolution decree vacated. Their motion was apparently granted. On August 21, 1996, Hugh filed for dissolution again. The court entered a decree on April 18, 1997, dissolving the marriage and distributing the property and debts of the parties. Mary timely appeals from this decree.

### III. ASSIGNMENTS OF ERROR

On appeal, Mary assigns two errors. First, Mary asserts that the district court erred in failing to make a fair and equitable distribution of the marital estate. Second, Mary asserts that the district court erred in failing to make a fair and equitable distribution of the marital debts.

### IV. ANALYSIS

#### 1. STANDARD OF REVIEW

In an appeal from a dissolution decree, it is established principle that the division of the marital estate is initially left to the discretion of the trial court and will be reviewed by an appellate court de novo on the record and affirmed absent an abuse of discretion. *Tyler v. Tyler*, 253 Neb. 209, 570 N.W.2d 317 (1997); *Shockley v. Shockley*, 251 Neb. 896, 560 N.W.2d 777 (1997); *Gerard-Ley v. Ley*, 5 Neb. App. 229, 558 N.W.2d 63 (1996). A judicial abuse of discretion exists when a judge, within the effective limits of authorized judicial power, elects to act or refrain from acting, but the selected option results in a decision which is untenable and unfairly deprives a litigant of a substantial right or a just result in matters submitted for disposition through the judicial system. *Tyler v. Tyler, supra*; *Else v. Else*, 5 Neb. App. 319, 558 N.W.2d 594 (1997).

In a review de novo on the record, an appellate court reappraises the evidence as presented by the record and reaches its own independent conclusions with respect to the matters at issue. *Tyler v. Tyler, supra*; *Pope v. Pope*, 251 Neb. 773, 559

N.W.2d 192 (1997); *Gerard-Ley v. Ley, supra.* If the evidence, as presented by the record, is in conflict, an appellate court considers, and may give weight to, the fact that the trial court heard and observed the witnesses and accepted one version of the facts rather than another. *Tyler v. Tyler, supra*; *Gerard-Ley v. Ley, supra.*

### 2. PROPERTY DISTRIBUTION

The first issue raised on appeal is the distribution of the marital estate. More specifically, Mary challenges only the court's failure to award her any interest in the parties' marital home. Mary acknowledges that Hugh owned the house prior to the marriage, but argues that she substantially contributed to renovations to the house during the marriage and that, as a result, she is entitled to an equitable share of the house's increase in value.

As a general rule, the marital estate includes only property accumulated and acquired during the marriage through the joint efforts of the parties. See *Shockley v. Shockley, supra.* Similarly, property acquired by one of the parties through gift or inheritance is ordinarily set off to the individual receiving the property and is not considered a part of the marital estate. *Tyler v. Tyler, supra*; *Van Newkirk v. Van Newkirk*, 212 Neb. 730, 325 N.W.2d 832 (1982). An exception to this general rule applies where both of the spouses have contributed to the improvement or operation of the property which one of the parties owned prior to the marriage or received by way of gift or inheritance, or the spouse not owning the property prior to the marriage or not receiving the property through gift or inheritance has significantly cared for the property during the marriage. *Id.* This rule, as well as the exception, has been applied in numerous cases since it was annunciated · in *Van Newkirk.* See, e.g., *Preston v. Preston*, 241 Neb. 181, 486 N.W.2d 902 (1992); *DaMoude v. DaMoude*, 229 Neb. 851, 429 N.W.2d 368 (1988); *Buche v. Buche*, 228 Neb. 624, 423 N.W.2d 488 (1988); *Sullivan v. Sullivan*, 223 Neb. 273, 388 N.W.2d 516 (1986); *Applegate v. Applegate*, 219 Neb. 532, 365 N.W.2d 394 (1985); *Ross v. Ross*, 219 Neb. 528, 364 N.W.2d 508 (1985); *Shald v. Shald*, 216 Neb. 897, 346 N.W.2d 406 (1984).

Because there is no dispute that Hugh owned this property prior to the marriage, the initial question is whether Mary has established that the *Van Newkirk* exception applies so that the property should be included within the marital estate. According to the record, during the marriage, the house was extensively remodeled. A kitchen was added, the roof was replaced, various plumbing projects were done, siding was put on the house, several appliances were replaced, window coverings were replaced, and a boat ramp and boat lift were renovated. Although no records concerning expenditures for these renovations were introduced at trial, Hugh estimated that the renovations probably cost approximately $50,000, while Mary estimated that the expenditures were closer to $250,000.

Hugh testified that Mary did nothing toward improving the property except that she was in charge of the books and was responsible for paying bills and writing checks. Mary testified that she worked with the contractors, assisted in some of the roofing work, did some of the painting, and moved "all these boards and all the things that needed to be moved" outside the house.

The record in this case does not include any appraisal of the house, either before the renovations or after the renovations. Additionally, Mary presented no evidence concerning the value of any of her "contributions" or evidence that the contributions were "significant." In *Tyler v. Tyler, supra*, the Nebraska Supreme Court held that a husband, who solely or with the assistance of his wife, made various improvements to a house that the wife brought into the marriage, including refinishing the doors and trim, building a deck, carpeting and painting the basement family room, replacing the kitchen counter tops, wallpapering and painting interior walls, installing four ceiling fans, painting the exterior of the house, retiling the master bathroom, installing new vinyl in the bathrooms, installing a heat pump, recarpeting the main floor of the house, installing a sump pump, and installing a garage door opener, was precluded from receiving any share of the house because he "failed to produce any evidence indicating the value of these contributions." *Tyler v. Tyler*, 253 Neb. at 214, 570 N.W.2d at 320. The hus-

band also "failed to demonstrate the significance of the afore-mentioned contributions." *Id.*

In the present case, there was no evidence presented concerning the value of the house at all, and Mary did not present any evidence concerning the value of her contributions or the significance of her contributions. The record merely reflects that Mary was responsible for paying the contractors who did the renovations and that she assisted with some of the work. In light of the Nebraska Supreme Court's holding in *Tyler v. Tyler, supra,* we find that Mary has failed to demonstrate that she is entitled to an interest in the house because of her contributions to the renovations.

The record also reflects that Hugh signed a deed to have the house titled to himself and Mary, as joint tenants. In Nebraska, it has been held that when a husband and wife take title to a property as joint tenants, even though one pays all the consideration therefor, a gift is presumed to be made by the spouse furnishing the consideration to the other. *Brown v. Borland,* 230 Neb. 391, 432 N.W.2d 13 (1988); *Gerard-Ley v. Ley,* 5 Neb. App. 229, 558 N.W.2d 63 (1996). This presumption is rebuttable. *Id.* In the present case, Hugh testified that he did not intend to give Mary an interest in the equity of the house, and he introduced a nuptial agreement prepared after the property was deeded to himself and Mary as joint tenants which indicates that Hugh is to receive the entire equity in the house upon dissolution. Although the nuptial agreement was not signed by the parties, it is evidence which the court could rely upon in concluding that Hugh rebutted the presumption of gift.

We cannot conclude that the district court committed an abuse of discretion in not awarding Mary an interest in the house because she did not present evidence of the value of her contributions and because Hugh presented evidence to rebut the presumption of a gift arising from the joint tenancy deed. This assigned error is without merit.

### 3. Debt Distribution

Mary also asserts that the district court did not make a fair and equitable distribution of the debts. The record indicates that the parties had the following debts at the time of dissolution: a

$15,000 debt to one "Jack Maryott," an outstanding balance on a Wells Fargo credit card of approximately $3,700, a $787 Agland Co-op debt, outstanding real estate taxes of approximately $2,200, car insurance of $300, a debt to First Bank of South Dakota of $12,000, a debt to J.C. Penney of $200, a debt to Younkers of $400, and an outstanding balance on a Chase Manhattan Visa credit card of $3,000. The court ordered Hugh to pay the debts to Jack Maryott, Wells Fargo, Agland Co-op, the real estate taxes, and the car insurance, totaling approximately $22,000. The court ordered Mary to pay the debts to First Bank of South Dakota, J.C. Penney, Younkers, and Chase Manhattan, totaling approximately $15,600.

Mary asserts that the debt to Jack Maryott was a premarital debt of Hugh's and that, accordingly, Hugh was ordered to pay only approximately $7,000 of marital debt, compared to her being ordered to pay more than twice that amount. The evidence indicates that the debt to Jack Maryott was incurred as a result of a dispute concerning a piano Hugh had owned prior to moving to Nebraska and marrying Mary. Although the court ordered Hugh to pay the debt, the court did not make a specific finding as to whether the $15,000 debt was being included as a marital debt.

The evidence indicates, however, that the $12,000 debt to First Bank of South Dakota, which Mary was ordered to pay, may not properly be considered a marital debt either. Hugh testified that Mary incurred that debt during the marriage to secure money to purchase a "Mini Mart" for her son. Mary testified that the money was used for living expenses only. The court did not make a specific finding as to whether the $12,000 debt was being included as a marital debt but ordered Mary to pay it.

On our de novo review of the record before us, we cannot conclude that the district court abused its discretion in the distribution of the debts. Although the evidence does support a finding that as Mary asserts on appeal, the Jack Maryott debt of $15,000 should not be considered a marital debt, the evidence also supports a finding that the First Bank of South Dakota debt of $12,000 should not be considered a marital debt. If both debts are treated as nonmarital debts, the court's decree would be read to order Hugh to pay approximately $7,000 of marital

debt and to order Mary to pay approximately $3,600 of marital debt. This assigned error is without merit.

## V. CONCLUSION

The district court did not abuse its discretion in failing to award Mary an interest in the house, and the court did not abuse its discretion in the distribution of debts. As a result, the decree is affirmed.

AFFIRMED.