NATALIE K. SCHUMAN, APPELLANT AND CROSS-APPELLEE, V.
BRADLEY W. SCHUMAN, APPELLEE AND CROSS-APPELLANT.
658 N.W.2d 30

Filed March 14, 2003.   No. S-01-904.

Abbie J. Widger and Stefanie J. Flodman, of Johnson, Flodman, Guenzel & Widger, for appellant.

Karin O'Connell for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

WRIGHT, J.

## NATURE OF CASE

Natalie K. Schuman appeals from a decree entered by the district court for Lancaster County which dissolved her marriage to Bradley W. Schuman and divided the marital estate. Bradley cross-appeals. Both parties assert that the court erred in its valuation and division of the marital estate.

## SCOPE OF REVIEW

■ The division of property is a matter entrusted to the discretion of the trial judge, which will be reviewed de novo on the record and will be affirmed in the absence of an abuse of discretion. *Pawlusiak v. Pawlusiak*, 264 Neb. 1, 645 N.W.2d 773 (2002).

■ In a review de novo on the record of an action for dissolution of marriage, an appellate court reappraises the evidence as presented by the record and reaches its own independent conclusions with respect to the matters at issue. See *Bauerle v. Bauerle*, 263 Neb. 881, 644 N.W.2d 128 (2002).

## FACTS

Bradley and Natalie were married on September 14, 1984. Four children were born during the marriage, all of whom were minors at the time of the dissolution proceedings. During the marriage, Natalie home-schooled the children and was not employed outside the home. Since 1982, Bradley has owned Hruska-Schuman Company, Inc. (Hruska-Schuman), a business

which sells and installs gutters, wood-burning stoves, and fireplace parts and accessories.

Natalie filed a petition for dissolution of the marriage, and the parties entered into a partial property settlement agreement. Custody of the children was to be awarded to Natalie subject to rights of "parenting time" for Bradley. The parties agreed to the valuation and division of various items of property. The present value of Hruska-Schuman and the real estate upon which it is located and the premarital value of the business were decided by the district court. The court also awarded Natalie possession of 30.57 acres of property in Saunders County.

Bradley purchased Hruska-Schuman for $150,000 on March 31, 1982. He made a $35,000 downpayment on the business with personal funds and a loan from his parents. He financed the balance of the purchase price with a small business loan. In 1994, Hruska-Schuman suffered a fire and was the victim of an embezzlement, which left the business with little to no value. Bradley built Hruska-Schuman back to its present value, and at the time of the dissolution proceedings, he managed the business and installed gutters and fireplaces.

The building in which the business is located has a total area of 6,800 square feet, including 1,020 for an office and reception area and 5,780 for a service and warehouse area. Wayne Kubert, Natalie's real estate appraiser, considered the building as containing retail space and a showroom. Kubert used three approaches in his appraisal: the cost approach, the income approach, and the sales comparison approach. Using these three approaches, Kubert valued the real estate at $225,000.

Gary Hassebrook, Bradley's real estate appraiser, used the same three basic approaches. However, Hassebrook evaluated the property as being used primarily as a warehouse rather than for retail. Hassebrook concluded that valuing the property as retail space would overstate the value. He valued the property at $160,000.

James Watts, a certified public accountant, testified to the value of Hruska-Schuman. Watts reviewed the corporate income tax returns, the workpapers of the accountant who prepared the returns, the accountant's analysis and income tax considerations, and the personal income tax returns of the parties. He utilized a

historical analysis of the trends of Hruska-Schuman's income for the past 3 years, reviewed the real estate appraisal, examined the income tax returns, and determined the normalized earnings. In his valuation, Watts used the excess earnings method of valuation. Relying in part on the real estate appraisal of Kubert, Watts valued Hruska-Schuman at $308,000. He did not consider the income tax consequences of a future sale of Hruska-Schuman.

Bradley's accountant, Dennis Stara, used Watts' valuation to calculate the estimated income taxes that would result from a future sale of Hruska-Schuman. Relying in part on Kubert's real estate appraisal, Stara concluded that Hruska-Schuman had a value of $161,872 after taxes. Relying in part on Hassebrook's real estate appraisal, Stara concluded that the business had a value of $135,024 after taxes.

The district court determined the value of Hruska-Schuman to be $135,000. In determining the value of the business, the court assumed a future sale and the tax consequences of such sale. The court further reduced the value of the business by $35,000 to account for the funds Bradley put into the business prior to the marriage.

In 1994, the parties purchased 30.57 acres of land in Saunders County for $60,000. The acreage was held in joint tenancy by the parties. At trial, Natalie testified that she wanted the acreage so she and the children could eventually live there. Both parties testified that they spent time at the acreage with the children. Natalie said she raised bees and harvested hay on the property. Bradley stated that he spent time at the acreage fishing with the children. Bradley said he had made various improvements, including installing a gate, repairing a fence, removing stones, filling badger holes, and helping the children build a treehouse. The district court found that the acreage was part of the marital estate and awarded the acreage to Natalie. In order to equalize the division of marital assets and debts, the court ordered Natalie to pay Bradley $11,399.50.

## ASSIGNMENTS OF ERROR

Natalie assigns, restated, that the district court erred in (1) considering the tax consequences of the sale of Hruska-Schuman, (2) reducing the value of the marital estate for taxes that may have to

be paid at some date in the future, (3) not considering a certain loan due and owing to Bradley, (4) finding the value of Hruska-Schuman should be reduced by $35,000 as the amount Bradley contributed to the business prior to the marriage, (5) determining the real estate on which Hruska-Schuman is located has a value of $160,000, (6) finding the marital value of Hruska-Schuman to be $100,000, and (7) ordering Natalie to pay Bradley $11,399.50.

On cross-appeal, Bradley assigns, restated, that the district court erred in (1) failing to award the real property in Saunders County to him and (2) failing to set off $53,000 as separate property which Bradley paid to purchase the acreage and which was an inheritance from his mother.

## ANALYSIS

We first consider (1) whether the district court erred in considering the tax consequences of the sale of the business, thereby reducing the value of the business by the amount of taxes that might have to be paid at some date in the future, and (2) whether the court erred in determining the value of the loan which it assigned as an asset to Bradley.

As a part of our analysis, we have concluded that the district court used the values contained in the "Joint Property Statement" which was marked and received as exhibit 7. Based on our review of exhibit 7, the partial property settlement agreement, and the decree of dissolution, we determine that the district court awarded and valued the property as follows:

| PROPERTY | NATALIE | BRADLEY |
|---|---|---|
| Duplex | $123,500 | |
| Hruska-Schuman | | $100,442 |
| Personal property | 2,000 | 2,000 |
| 1995 Suburban | 14,500 | |
| Horse, donkey, and related items | 500 | |
| 1997 Charger boat | | 14,000 |
| 30.57 acres | 60,000 | |
| Hruska-Schuman loan | | 7,259 |
| Mortgage on duplex | (54,000) | |
| | | |
| TOTALS | $146,500 | $123,701 |

The court found that the difference in value of the property was $22,799. It divided this amount in half and ordered Natalie to pay $11,399.50 to Bradley in three equal annual installments.

Natalie claims that the district court erred by considering the tax consequences of the sale of Hruska-Schuman. She argues that it was inappropriate to consider such tax consequences when Bradley did not intend to sell the business, the court did not order the sale of the business, and the record did not indicate that the sale of the business would occur within a short period of time. She claims that any tax consequences from such sale are speculative and not reasonably predictable.

The district court found that the tax consequences of a future sale of the business should be taken into account when determining its present value. The court reasoned it would not be equitable to allow Natalie to derive only the benefits of the growth of the business and not assume her share of the risks involved in the growth of the business throughout the marriage.

The district court relied on *Buche v. Buche*, 228 Neb. 624, 423 N.W.2d 488 (1988), to support its decision to reduce the marital estate for taxes that would eventually have to be paid as a result of the sale of the business. *Buche* involved the valuation of an IRA in the division of marital property. We concluded that income tax would eventually have to be paid on the IRA and that, therefore, it was proper to consider the future tax consequences in determining the present value of the IRA.

Natalie argues that *Buche* is distinguishable because we also determined it was improper to consider a penalty which would have had to be paid if the respondent withdrew the IRA. We concluded that since the IRA was not going to be withdrawn, the penalty was to be disregarded. However, since it was certain that income tax would eventually have to be paid on the IRA, we considered the future tax consequences in our valuation. Natalie argues in the instant case that there is no evidence that Hruska-Schuman is going to be sold and that, therefore, we should not consider the tax consequences of the sale for the same reasons we did not consider the penalty consequences in *Buche*.

We have not previously addressed whether tax consequences resulting from the sale of a business should be considered in the division of marital property. The majority of courts that have

addressed this issue have generally refused to consider the tax consequences of the sale of a business unless there is evidence that a sale is contemplated or reasonably certain to occur. See *Bidwell and Bidwell*, 170 Or. App. 239, 12 P.3d 76 (2000).

In *Mathew v. Palmer*, 8 Neb. App. 128, 589 N.W.2d 343 (1999), the Nebraska Court of Appeals concluded that a deduction in value for income tax on stock which was not due to be sold in the foreseeable future was clearly speculative. See, also, *In re Marriage of Fonstein*, 17 Cal. 3d 738, 552 P.2d 1169, 131 Cal. Rptr. 873 (1976) (holding trial court erred by taking into account tax consequences which might result to husband in event he subsequently decided to convert his interest in law partnership into cash, in absence of any indication that husband was withdrawing from partnership, was required to withdraw, or intended to withdraw); *England v. England*, 626 So. 2d 330 (Fla. App. 1993) (finding trial court abused its discretion by considering tax consequences of sale of business when there was no evidence that sale of business was imminent or even contemplated); *Cohen v. Cohen*, 73 S.W.3d 39 (Mo. App. 2002) (concluding trial court did not abuse its discretion by failing to consider tax consequences of sale of parties' art business when evidence did not support necessity of such sale and court did not order such sale); *Kudela v. Kudela*, 277 A.D.2d 1015, 716 N.Y.S.2d 231 (2000) (stating trial court is not required to consider tax consequences of sale of business property when there is no evidence that business property would have to be sold); *Arbuckle v. Arbuckle*, 22 Va. App. 362, 470 S.E.2d 146 (1996) (holding tax consequences of hypothetical sale of husband's dental practice were too speculative without evidence that sale would occur in near future); *In re Hay*, 80 Wash. App. 202, 907 P.2d 334 (1995) (holding that if tax consequences of sale of parties' real estate partnership are imminent, or arise directly from trial court's property disposition, and amount is not speculative, such consequences are properly considered in valuing marital assets).

We conclude that in assigning a value to a business for purposes of dividing the property in an action for dissolution of marriage, a trial court should not consider the tax consequences of the sale of the business unless there is a finding by the court that

the sale of the business is reasonably certain to occur in the near future. However, the court may consider such tax consequences if it finds that the property division award will, in effect, force a party to sell his or her business in order to meet the obligations imposed by the court.

■ The division of property is a matter entrusted to the discretion of the trial judge, which will be reviewed de novo on the record and will be affirmed in the absence of an abuse of discretion. *Pawlusiak v. Pawlusiak*, 264 Neb. 1, 645 N.W.2d 773 (2002). A judicial abuse of discretion exists when a judge, within the effective limits of authorized judicial power, elects to act or refrains from acting, and the selected option results in a decision which is untenable and unfairly deprives a litigant of a substantial right or a just result in matters submitted for disposition through a judicial system. *McLaughlin v. McLaughlin*, 264 Neb. 232, 647 N.W.2d 577 (2002). We will, therefore, review the district court's consideration of the tax consequences for an abuse of discretion.

■ In a review de novo on the record of an action for dissolution of marriage, an appellate court reappraises the evidence as presented by the record and reaches its own independent conclusions with respect to the matters at issue. See *Bauerle v. Bauerle*, 263 Neb. 881, 644 N.W.2d 128 (2002). However, when evidence is in conflict, the appellate court may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. See *Noonan v. Noonan*, 261 Neb. 552, 624 N.W.2d 314 (2001). The trial court's valuation of a closely held corporation is reasonable if it has an acceptable basis in fact and principle. *Keim v. Keim*, 228 Neb. 684, 424 N.W.2d 112 (1988).

At trial, Bradley testified that he had received an offer to purchase the assets of Hruska-Schuman. He also testified that he could not "honestly say" whether he intended to sell the business. Bradley later testified that his decision whether to remain in business or sell would depend on his financial position after the divorce.

The district court commented that it agreed with Natalie that there was no evidence that the business was going to be sold in the near future. Nevertheless, the court considered the tax

consequences of such sale in its valuation of the business. The record does not support a conclusion that the sale of Hruska-Schuman was reasonably certain to occur in the near future or that the court's property division award would require Bradley to sell Hruska-Schuman in order to meet the obligations imposed by the court. We conclude that under the facts of this case, the court abused its discretion in considering the tax consequences of the sale of Hruska-Schuman and reducing the value of the business by such amount.

Natalie next argues that the district court erroneously valued a loan from Bradley to Hruska-Schuman at $7,259 rather than $36,166, as was indicated on the income tax returns, and that as a result, Bradley received a double benefit. We conclude that the court erred in assigning a value of $7,259 to the loan. In the valuation of the business, the loan from Bradley was listed as a liability to the business. Since this liability reduced the value of the business by a comparable amount, the sum of $36,166 should have been assigned as an asset to Bradley rather than the $7,259. Therefore, the property assigned to Bradley was undervalued by $28,907.

We next consider Natalie's claim that the district court erred in determining the value of the real estate on which Hruska-Schuman is located. Both parties presented expert testimony concerning the value of the real estate. Hassebrook opined the market value of the real estate to be $160,000, and Kubert opined the market value of the real estate to be $225,000. Natalie asserts that Kubert's appraisal more accurately reflects the best use of the real estate owned by Hruska-Schuman. The court found Hassebrook's value of the real estate to be more persuasive than Kubert's for the reason that Kubert did not use comparable land sales that are accepted by the Uniform Standards of Professional Appraisal Practice. The court also found that Kubert had used many adjustments to his comparables to arrive at his values when there were available comparables that needed no adjustments. The court further reasoned that Kubert's appraisal was more than $100,000 over the current tax value of the real estate as calculated in the most recent countywide assessment. Our de novo review of the record indicates that the district court did not abuse its discretion in its valuation of the property.

Having determined that the district court abused its discretion in considering the tax consequences of the sale of Hruska-Schuman and that the court did not abuse its discretion in finding Hassebrook's valuation more persuasive, we conclude that the business should have been valued at $243,000.

We next consider whether the $35,000 downpayment that Bradley allegedly used to purchase the business prior to the marriage was nonmarital property and should be deducted as a nonmarital asset. Bradley claims that he paid $35,000 toward the purchase of the business in March 1982 and that the parties were not married until September 1984. Natalie argues that the $35,000 used to purchase the business should be considered a part of the marital estate because at one time during the marriage, the business had no value at all.

The burden of proof to show that property is a nonmarital asset remains with the person making the claim. *Harris v. Harris*, 261 Neb. 75, 621 N.W.2d 491 (2001). We conclude that Bradley has met his burden of demonstrating that the $35,000 represented a premarital contribution to the business and that, therefore, the district court did not err in determining that this amount should be deducted from the value of the business.

In his cross-appeal, Bradley argues that the district court erred in failing to award him the Saunders County acreage or, in the alternative, that the court erred in failing to set off as separate property the payments made toward the acreage from Bradley's inheritance. We conclude the district court did not abuse its discretion by awarding the Saunders County acreage to Natalie.

Bradley argues in the alternative that the $53,000 he inherited from his mother should be awarded to him as nonmarital property because the proceeds from the inheritance can be traced to the purchase of the Saunders County acreage. The district court found that any inheritance Bradley may have used to purchase the acreage was marital property because the acreage was placed in joint tenancy with Natalie. Relying on *Gerard-Ley v. Ley*, 5 Neb. App. 229, 558 N.W.2d 63 (1996), Natalie argues that when the acreage was placed in joint tenancy, it became marital property regardless of whether proceeds from Bradley's inheritance were used to purchase the acreage.

The question in *Gerard-Ley* was whether a residence held in joint tenancy by a husband and wife was part of the marital estate for purposes of property division in a dissolution of marriage. During the marriage, the husband obtained just under $1,750,000 in proceeds from the sale of bank stock he received from his parents through inheritance and gifts. He used $140,000 of the proceeds to pay the balance due on the residence. In analyzing whether the proceeds paid toward the residence were to be set off as nonmarital property, the Court of Appeals concluded:

> [B]ecause [the husband] took title to the property along with [his wife] as joint tenants, it is appropriate to presume that he intended to make a gift to [his wife] of a one-half interest in the property. Recognizing that this presumption is rebuttable, we find no testimony or evidence in the record to rebut the presumption. . . . The district court did not abuse its discretion in including the [parties'] property in the marital estate.

*Id.* at 237, 558 N.W.2d at 68. In arriving at its conclusion, the Court of Appeals adopted the following principle:

> The Nebraska Supreme Court has held that "when a husband and wife take title to a property as joint tenants, even though one pays all the consideration therefor, a gift is presumed to be made by the spouse furnishing the consideration to the other . . . ." *Brown v. Borland*, 230 Neb. 391, 395, 432 N.W.2d 13, 17 (1988). See, also, *Marco v. Marco*, 196 Neb. 313, 242 N.W.2d 867 (1976); *Hein v. W. T. Rawleigh Co.*, 167 Neb. 176, 92 N.W.2d 185 (1958); *Peterson v. Massey*, 155 Neb. 829, 53 N.W.2d 912 (1952). This presumption is a rebuttable presumption. *Brown v. Borland, supra*; *Marco v. Marco, supra*.

*Gerard-Ley*, 5 Neb. App. at 235, 558 N.W.2d at 67.

■ The Court of Appeals erred in applying the aforementioned principle in *Gerard-Ley*. None of the cases cited in the quote above involved a dispute between spouses over property distribution following a dissolution of marriage. The manner in which property is titled or transferred by the parties during the marriage does not restrict the trial court's determination of how the property will be divided in an action for dissolution of marriage. As a general rule, all property accumulated and acquired

by either spouse during the marriage is part of the marital estate, unless it falls within an exception to the general rule. *Heald v. Heald*, 259 Neb. 604, 611 N.W.2d 598 (2000). To the extent that the Court of Appeals' opinion in *Gerard-Ley* can be interpreted to mean that nonmarital property which during a marriage is titled in joint tenancy cannot be considered as a nonmarital asset in an action for dissolution of marriage, such interpretation is expressly disapproved.

■ How property inherited by a party before or during the marriage will be considered in determining the division of property or an award of alimony must depend upon the facts of the particular case and the equities involved. *Tyma v. Tyma*, 263 Neb. 873, 644 N.W.2d 139 (2002). If the inheritance can be identified, it is to be set off to the inheriting spouse and eliminated from the marital estate. *Id.*

Bradley testified that he made a $20,000 downpayment on the Saunders County acreage. Natalie testified that the downpayment funds came from an account which contained a portion of Bradley's inheritance from his mother. Natalie testified that the account was jointly held by the parties and that there were other deposits to and withdrawals from the account from other sources. Bradley also testified that he made a loan to Hruska-Schuman from some of the same inheritance. Hruska-Schuman eventually paid back the loan, and Bradley testified he used those funds to pay the balance due on the acreage. However, Bradley did not testify as to the amount of the inheritance he loaned to his business and subsequently used to pay the balance due on the acreage.

The record supports a conclusion that $19,000 of Bradley's inheritance was eventually used to purchase the Saunders County acreage. The parties purchased the land for approximately $60,000. Approximately $20,000 of Bradley's inheritance was deposited into the joint savings account. The downpayment was a certified check of approximately $19,000, and the money for the check came from this joint account. We conclude that the district court erred in not setting aside $19,000 from the Saunders County acreage as a part of Bradley's inheritance.

We now proceed to divide the property between Natalie and Bradley. Because appeals in domestic relations matters are

heard de novo on the record, an appellate court is empowered to enter the order which should have been made as reflected by the record. See *Bowers v. Lens*, 264 Neb. 465, 648 N.W.2d 294 (2002). The value of the assets received by Bradley should be increased to reflect the value of Hruska-Schuman at $243,000 and the value of his loan to the business at $36,166. The $35,000 used to purchase the business was a nonmarital asset, and the district court correctly deducted that amount from the value of the business.

In addition, $19,000 of the value of the Saunders County property should be assigned to Bradley as nonmarital property. The net result is that Bradley received property valued at approximately $241,000 and Natalie received property valued at $146,500. The difference in such distribution of property is $94,500. Bradley is therefore ordered to pay one-half of this amount ($47,250) in 10 equal annual installments of $4,725. The first payment shall be due 1 year from the date the mandate of this court is spread on the records of the district court. The subsequent annual payments shall be due each year thereafter until the balance is paid in full. The judgment amount shall accrue interest at the legal rate for judgments from the date the mandate is spread on the records of the district court until said judgment is paid in full.

## CONCLUSION

We affirm in part, and in part reverse, and remand with directions that the district court is to divide the marital estate in accordance with this opinion.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED WITH DIRECTIONS.