Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
04/20/2021 08:08 AM CDT

Melvin Kadel Bowen, appellant, v.
Karen Denise Bowen, appellee.

___ N.W.2d ___

Filed April 6, 2021.    No. A-20-194.

1. **Divorce: Child Custody: Child Support: Property Division: Alimony: Attorney Fees: Appeal and Error.** In a marital dissolution action, an appellate court reviews the case de novo on the record to determine whether there has been an abuse of discretion by the trial judge. This standard of review applies to the trial court's determinations regarding custody, child support, division of property, alimony, and attorney fees.

2. **Judgments: Words and Phrases.** An abuse of discretion occurs when a trial court bases its decision upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence.

3. **Divorce: Property Division.** Under Neb. Rev. Stat. § 42-365 (Reissue 2016), the equitable division of property is a three-step process. The first step is to classify the parties' property as marital or nonmarital, setting aside the nonmarital property to the party who brought that property to the marriage. The second step is to value the marital assets and marital liabilities of the parties. The third step is to calculate and divide the net marital estate between the parties in accordance with the principles contained in § 42-365.

4. ____: ____. The ultimate test in determining the appropriateness of the division of property is fairness and reasonableness as determined by the facts of each case.

5. ____: ____. Generally, all property accumulated and acquired by either spouse during a marriage is part of the marital estate.

6. ____: ____. The marital estate does not include property that a spouse acquired before the marriage, or by gift or inheritance.

7. ____: ____. Separate property becomes marital property by commingling if it is inextricably mixed with marital property or with the

separate property of the other spouse. If the separate property remains segregated or is traceable into its product, commingling does not occur, and thus it does not become marital property.

8. **Property Division: Proof.** The party claiming that property is nonmarital has the burden of proving the property's separate status.

9. **Divorce: Courts: Property Division.** The manner in which property is titled or transferred by the parties during the marriage does not restrict the trial court's determination of how the property will be divided in an action for dissolution of marriage.

10. **Divorce: Property Division: Judicial Sales.** A court in a dissolution action may provide for the sale of all or part of the parties' assets in lieu of dividing them, if to do so is reasonable in the light of the facts, the circumstances of the parties, and the nature of their property.

Appeal from the District Court for Sarpy County: NATHAN B. COX, Judge. Affirmed in part, and in part reversed and remanded with directions.

Donald A. Roberts, of Lustgarten & Roberts, P.C., L.L.O., for appellant.

Mona L. Burton, of Anderson, Creager & Wittstruck, P.C., L.L.O., for appellee.

RIEDMANN, BISHOP, and WELCH, Judges.

WELCH, Judge.

## I. INTRODUCTION

Melvin Kadel Bowen appeals the dissolution decree entered by the Sarpy County District Court dissolving his marriage to Karen Denise Bowen. Melvin contends the district court erred in failing to find that certain real property was a marital asset and in ordering the sale of real property rather than dividing the real property and ordering an equalization payment. For the reasons set forth herein, we affirm in part, and in part reverse and remand with directions.

## II. STATEMENT OF FACTS

Melvin and Karen married in September 2010. No children were born of the marriage. Melvin filed for dissolution in

June 2018. At the time of trial, Melvin was 57 years old and Karen was 50 years old.

During the parties' marriage, Melvin was employed as a mission analyst for an information technology company and later as a civilian employee for the U.S. Air Force. In addition to his salary, Melvin received military retirement and disability payments from the Department of Veterans Affairs (VA) resulting from his military service that ended prior to the date of the parties' marriage. Karen was unemployed as of 2015, but received VA disability income and monthly Social Security benefits. Karen testified that during the marriage, Melvin told her she did not have to work or pay any bills.

## 1. Trial

The evidence adduced at trial that is relevant to this appeal centered on the parties' real property consisting of a property on Rahn Boulevard in Nebraska and a property on Sunset Drive in North Carolina.

## (a) Rahn Boulevard Property

Melvin purchased the Rahn Boulevard property in 2004 with his ex-wife and originally encumbered the property with a mortgage in the amount of $182,663.64.

In October 2010, at Karen's request, Melvin executed a quitclaim deed adding Karen as a titleholder to the Rahn Boulevard property. Melvin testified that he signed the deed voluntarily and that it was "[his] intent to include [Karen] on the deed" as tenants in common. Although Melvin testified that he added Karen's name to the property "[b]ecause we were married," because he "felt it was the right thing to do," and "so [Karen] would . . . feel comfortable in the house," he also testified that he did not intend to make a gift to Karen of half the value of the property.

Melvin testified that during the parties' marriage, there were improvements made to the Rahn Boulevard property, including the installation of granite countertops and crown molding in the kitchen. According to Melvin, he and Karen

installed the backsplash themselves and he alone paid for these upgrades. Melvin testified that at the time of trial, a Sarpy County website listed the value of the Rahn Boulevard property at approximately $213,000 and the remaining mortgage balance was $51,000.

Melvin also testified he discovered Karen had executed a real estate transfer statement and quitclaim deed of the Rahn Boulevard property to herself and her two daughters dated March 2018. Melvin explained he was unaware that Karen executed these documents.

Karen testified Melvin deeded half of the Rahn Boulevard house to her because she told Melvin she did not want to live in a house previously inhabited by Melvin and his ex-wife and that she was uncomfortable with the property being titled solely in his name. She further explained another reason Melvin included her on the deed "was that I owned half of that house to do whatever I choose to do with, and he had his half that he could do whatever he wanted to do as far as if something would happen to either one of us." Further, Karen testified that after she moved into the property in July 2010, the property still had the furnishings from Melvin's first marriage which Karen explained was "not going to work. I didn't want to live like that," so she took responsibility for refurnishing the property. Karen moved out of the residence on December 15, 2018. Karen testified that at the time of trial, the value of the Rahn Boulevard property was $250,300 with a mortgage balance of $54,597.34. In exhibit 61, Karen's "Suggestions to the Court" (which was received as an aid to the court), she suggested that Melvin should be awarded the Rahn Boulevard property.

### (b) Sunset Drive Property

During the parties' marriage, they purchased the Sunset Drive property located in North Carolina for $263,000. Melvin testified he paid $26,000 as a downpayment with money from his premarital accounts. In connection with that purchase, the court received exhibit 21, which included a bank statement

indicating that as of November 20, 2018, the unpaid principal balance on the mortgage for the Sunset Drive property was $214,865.65 and the total amount paid against the mortgage balance during the marriage was $21,846.24.

Melvin testified that he should be awarded the Sunset Drive property, that the current value of the property was $295,000, and that the current mortgage balance was $214,865.65. Karen agreed Melvin should be awarded the Sunset Drive property, but testified the value of the property was $309,800. Karen testified that after reducing the equity in the property by Melvin's $26,000 downpayment, the remaining $68,935 in equity in the property should be divided equally.

## 2. Dissolution Decree

The district court entered a decree of dissolution in August 2019. In the decree, as relevant to this appeal, the district court found Melvin owned the Rahn Boulevard property prior to the marriage, but added Karen's name to the deed giving her "joint status of ownership," making the property part of the marital estate. The district court ordered the sale of the Rahn Boulevard property with the proceeds or liabilities split equally between the parties. The district court found the parties acquired the Sunset Drive property during the marriage but utilized $26,000 of Melvin's premarital assets in making a downpayment for the property. The district court also ordered a sale of the Sunset Drive property with any profits or losses split equally between the parties after reducing the equity by $26,000 for Melvin's downpayment.

Melvin moved for a new trial or, in the alternative, to alter or amend the decree, alleging the district court's findings were not supported by the facts or the law. In support of his motion, Melvin argued the court erred in finding the Rahn Boulevard property was a marital asset and in ordering the sale of the Sunset Drive property. Following a hearing, the district court denied Melvin's motion for new trial or to alter or amend the decree.

Karen filed a motion to clarify, which in relevant part requested clarification on how the parties were to accomplish the sales of the Rahn Boulevard and Sunset Drive properties. In response, the district court entered an order stating that if Melvin or Karen wished to purchase the Rahn Boulevard property, the Sunset Drive property, or both,

> he/she may do so if the parties are able to agree upon a sales price. The purchasing party would then have 30 days after closing on the property in question within which to provide the non-purchasing party's portion of the proceeds from the sale of the home(s).
>
> If neither party chooses to purchase one and/or both homes, the same shall be placed on the market within 60 days of the date of this order. [Melvin] shall be responsible to prepare the properties for sale and any reasonable costs to prepare the houses for sale shall be deducted from the proceeds and reimbursed to him prior to a division pursuant to the Court's Decree. If [Melvin] and [Karen] cannot agree on a realtor within 15 days of this order, then Re/Max Real Estate Company will be used, and a specific realtor is to be randomly assigned by the company in each market. If the parties cannot agree on a sales price, the Re/Max Real Estate Company's agent will provide the offering price using their best professional judgment of the fair market values of each property. [Melvin] and [Karen] shall cooperate in the sale of the homes in signing all necessary documents. [Karen's] portion of the proceeds shall be paid within 30 days of the closing of each home.

Melvin has timely appealed to this court.

### III. ASSIGNMENTS OF ERROR

Melvin contends that the district court erred (1) in finding the Rahn Boulevard property was a marital asset and (2) in ordering the sale of the Rahn Boulevard and Sunset Drive properties rather than awarding the properties to him and ordering an equalization payment from Melvin to Karen.

## IV. STANDARD OF REVIEW

[1] In a marital dissolution action, an appellate court reviews the case de novo on the record to determine whether there has been an abuse of discretion by the trial judge. This standard of review applies to the trial court's determinations regarding custody, child support, division of property, alimony, and attorney fees. *Dycus v. Dycus*, 307 Neb. 426, 949 N.W.2d 357 (2020).

[2] An abuse of discretion occurs when a trial court bases its decision upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Windham v. Kroll*, 307 Neb. 947, 951 N.W.2d 744 (2020).

## V. ANALYSIS

### 1. Marital Estate

Melvin first argues the district court erred in finding the Rahn Boulevard property was a marital asset. In support of his contention, Melvin argues that he clearly purchased the property prior to his marriage with Karen and added Karen's name to the title because she did not want to live in the house previously inhabited by himself and his ex-wife and that he simply added Karen's name to the title to assuage her discomfort in living in a property previously purchased and inhabited by Melvin and his ex-wife. More specifically, Melvin asserts that by adding Karen's name to the title, he did not intend to make a gift of the property. As such, he argues his actions did not convert the premarital property into marital property.

[3,4] Regarding the marital estate, the Nebraska Supreme Court has articulated:

Under Neb. Rev. Stat. § 42-365 (Reissue 2008), the equitable division of property is a three-step process. The first step is to classify the parties' property as marital or nonmarital, setting aside the nonmarital property to the party who brought that property to the marriage. The second step is to value the marital assets and marital

liabilities of the parties. The third step is to calculate and divide the net marital estate between the parties in accordance with the principles contained in § 42-365. See, *Sitz v. Sitz*, 275 Neb. 832, 749 N.W.2d 470 (2008); *Plog v. Plog*, 20 Neb. App. 383, 824 N.W.2d 749 (2012). The ultimate test in determining the appropriateness of the division of property is fairness and reasonableness as determined by the facts of each case.

*Despain v. Despain*, 290 Neb. 32, 41, 858 N.W.2d 566, 573 (2015).

[5-8] In classifying assets as marital or nonmarital, the Nebraska Supreme Court has explained:

Generally, all property accumulated and acquired by either spouse during a marriage is part of the marital estate. Exceptions include property that a spouse acquired before the marriage, or by gift or inheritance. Setting aside nonmarital property is simple if the spouse possesses the original asset, but can be problematic if the original asset no longer exists. Separate property becomes marital property by commingling if it is inextricably mixed with marital property or with the separate property of the other spouse. If the separate property remains segregated or is traceable into its product, commingling does not occur. The burden of proof rests with the party claiming that property is nonmarital.

*Brozek v. Brozek*, 292 Neb. 681, 698, 874 N.W.2d 17, 31 (2016).

Applying these principles to the case at bar, it is clear from the record that Melvin acquired the Rahn Boulevard property prior to his marriage to Karen. As such, the property would be considered nonmarital and set aside for Melvin unless the property became marital because of actions taken by Melvin and Karen after their marriage.

In this case, approximately a month after their marriage, Melvin added Karen to the title of the Rahn Boulevard property. Karen moved into the property and lived there with Melvin, and the parties made certain improvements to the

property. Melvin testified he funded these improvements, but the record is unclear as to whether the improvements were made with marital or nonmarital funds. After reviewing the evidence, the district court found:

> [Melvin] added [Karen's] name to the title on that property, hereby giving her joint status of ownership to the same. Accordingly, the Court finds that said property is marital property. Thus, the Court orders that said property should be sold and any proceeds or liabilities shall be split equally (50/50) between the parties.

Melvin argues that in making this finding, the district court applied a presumption that was disapproved by the Nebraska Supreme Court in *Schuman v. Schuman*, 265 Neb. 459, 658 N.W.2d 30 (2003).

[9] In *Schuman*, the court addressed the application of a joint-title presumption in connection with property distribution following a dissolution of marriage. The specific principle to be applied was framed by the court as follows: "'"[W]hen a husband and wife take title to a property as joint tenants, even though one pays all the consideration therefor, a gift is presumed to be made by the spouse furnishing the consideration to the other . . . ." [Citations omitted.] This presumption is a rebuttable presumption.'" *Schuman*, 265 Neb. at 469, 658 N.W.2d at 39. After noting that the Nebraska Court of Appeals had previously applied the gift presumption in connection with the distribution of property following a dissolution in *Gerard-Ley v. Ley*, 5 Neb. App. 229, 558 N.W.2d 63 (1996), the *Schuman* court held:

> The Court of Appeals erred in applying the aforementioned principle in *Gerard-Ley*. None of the cases cited in the quote above involved a dispute between spouses over property distribution following a dissolution of marriage. The manner in which property is titled or transferred by the parties during the marriage does not restrict the trial court's determination of how the property will be divided in an action for dissolution of marriage. As a general rule, all property accumulated and acquired by

either spouse during the marriage is part of the marital estate, unless it falls within an exception to the general rule. *Heald v. Heald*, 259 Neb. 604, 611 N.W.2d 598 (2000). To the extent that the Court of Appeals' opinion in *Gerard-Ley* can be interpreted to mean that nonmarital property which during a marriage is titled in joint tenancy cannot be considered as a nonmarital asset in an action for dissolution of marriage, such interpretation is expressly disapproved.

265 Neb. at 469-70, 658 N.W.2d at 39.

Melvin argues that the district court's finding here clearly applied the gift presumption rule disapproved of in *Schuman* and that the district court erred in concluding the Rahn Boulevard property became a marital asset. Although we agree with Melvin that the act of adding Karen to the title is not dispositive of the issue, we disagree that the district court's ultimate conclusion was in error.

Although Melvin's act of adding Karen's name to the title did not create a presumption that he gifted the property to her, it was evidence to be considered with all other evidence here in determining whether the Rahn Boulevard property retained its character as a nonmarital asset following the parties' marriage. Stated differently, even though adding Karen to the title does not create a presumption that Melvin gifted the asset to her, it does provide some evidence of Melvin's state of mind at the time he added her name to the title. As a general rule, property which one party brings into the marriage is excluded from the marital estate. *Onstot v. Onstot*, 298 Neb. 897, 906 N.W.2d 300 (2018). However, the burden of proof to show that property is a nonmarital asset remains with the person making the claim. *Id*. Applying that burden, we hold the district court did not abuse its discretion in finding the Rahn Boulevard property became a marital asset following certain circumstances occurring after Melvin's marriage to Karen.

In support of that finding, the record indicates that Karen objected to living in the Rahn Boulevard property due to its affiliation with Melvin's ex-wife. In order to assuage her

concerns, Melvin agreed to add Karen to the title of the Rahn Boulevard property, and the record includes evidence that Melvin told Karen she was free to do what she wanted with her half of the property. This testimony, together with the testimony of how the parties subsequently worked together to improve the Rahn Boulevard property and their postmarriage living arrangements, was sufficient to support the district court's determination that Melvin intended to convert this one-time nonmarital property into marital property. And, although following the Nebraska Supreme Court's holding in *Schuman v. Schuman*, 265 Neb. 459, 658 N.W.2d 30 (2003), a court is not prohibited from considering a previously nonmarital asset that is jointly titled during marriage as a nonmarital asset, it is not required to do so. Such a finding depends on the facts and circumstances of each case.

In this case, Melvin simply did not satisfy his burden of showing the Rahn Boulevard property remained a nonmarital asset following the parties' marriage. Further, we note Melvin did not present evidence to support a finding that at least a portion of the equity in the property, the part accruing prior to his marriage to Karen, should be considered nonmarital property. For instance, there was no evidence offered regarding the value of the property or the mortgage balance as of the date of the marriage. Instead, the issue was framed by Melvin as having preserved the entirety of the property as nonmarital. As discussed above, having failed to satisfy his burden to establish the Rahn Boulevard property was nonmarital, the court did not err in finding the Rahn Boulevard property became marital property. The first assigned error fails.

## 2. Property Division

Next, Melvin contends the district court erred in ordering the sale of the Rahn Boulevard and Sunset Drive properties because neither Melvin nor Karen disputed that he should be awarded those properties. Instead, Melvin argues that the properties should have been awarded to him and that he should have been ordered to pay an appropriate equalization

payment in relation to the equity in the properties. Melvin argues that because the parties agreed he should be awarded the properties, the district court abused its discretion in ordering the sale of the properties.

[10] "Nebraska courts do not generally order sales of marital assets to facilitate distribution. In the few cases where a sale is ordered, the sale was the only practical way to divide the parties' assets." *Kellner v. Kellner*, 8 Neb. App. 316, 328, 593 N.W.2d 1, 10 (1999). After discussing the few Nebraska cases in which marital property had been ordered sold, this court stated:

> [A] court in a dissolution action may provide for the sale of all or part of the parties' assets in lieu of dividing them, if to do so is reasonable in the light of the facts, the circumstances of the parties, and the nature of their property. Such action, of course, must be within the statutory dictate that the division of the assets be reasonable, having regard for the circumstances of the parties as provided in § 42-365, and that it satisfy the ultimate test of fairness and reasonableness articulated by case law.

*Kellner*, 8 Neb. App. at 332, 593 N.W.2d at 12.

Here, although the parties agreed that the district court should award both the Rahn Boulevard and Sunset Drive properties to Melvin, they disagreed on the market value of both properties and differed on the mortgage balance of the Rahn Boulevard property. Melvin valued the Rahn Boulevard property at $213,000, whereas Karen valued the property at $250,300. Melvin testified the Rahn Boulevard property had a mortgage balance of $51,000, whereas Karen testified the mortgage balance was slightly under $54,600. Based upon the parties' testimonies, Melvin asserted the net value of the Rahn Boulevard property was $162,000 ($213,000 less the $51,000 mortgage) and Karen's net value of the property was $195,700 ($250,300 less the $54,600 mortgage). Thus, the parties' valuations for the Rahn Boulevard property were $33,700 apart.

Similarly, regarding the Sunset Drive property, Melvin valued the property at $295,000, whereas Karen valued the property at $309,800. Melvin testified the current mortgage balance on the property was just under $214,900, which was not disputed by Karen. Based upon the parties' testimonies, Melvin's net value of the Sunset Drive property was $80,100 ($295,000 less the $214,900 mortgage) and Karen's net value of the property was $94,900 ($309,800 less the $214,900 mortgage). Thus, the parties' valuations of the Sunset Drive property were only $14,800 apart. Further, Karen testified that Melvin should be awarded the Sunset Drive property and that the equity in the property should be reduced by Melvin's $26,000 downpayment.

Based upon the circumstances present in this case, including that the parties' valuations of the Rahn Boulevard property and the Sunset Drive property were relatively close, a $33,700 difference in one and a $14,800 difference in the other; that both parties agreed Melvin should be awarded both properties; and that Melvin had sufficient assets from which to pay an equalization payment, the district court's decision to order the Rahn Boulevard and Sunset Drive properties sold was not reasonable. Accordingly, we reverse the district court's order requiring the parties to sell the Rahn Boulevard and Sunset Drive properties and remand the cause with directions for the district court to determine the value of these assets on the existing record; award the two properties to Melvin; order Melvin to refinance the mortgages in his name alone, if necessary, by a date certain with the parties to evenly share that expense; order a payment to Karen to equalize the marital equity in these properties; and provide for any other orders necessary to accomplish our directives set forth in this opinion.

## VI. CONCLUSION

For the foregoing reasons, we affirm the district court's determination that the Rahn Boulevard property was marital. However, we reverse the district court's order for the

parties to sell the Rahn Boulevard and Sunset Drive properties and remand the cause with directions for the district court to determine the value of these assets on the existing record; award the two properties to Melvin; order Melvin to refinance the mortgages in his name alone, if necessary, by a date certain with the parties to evenly share that expense; order a payment to Karen to equalize the marital equity in these properties; and provide any other orders necessary to accomplish our directives set forth in this opinion.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED WITH DIRECTIONS.