IN THE NEBRASKA COURT OF APPEALS

MEMORANDUM OPINION AND JUDGMENT ON APPEAL
(Memorandum Web Opinion)

JAHNKE V. JAHNKE

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

JEREMIAH C. JAHNKE, APPELLANT,

V.

CINDI R. PIPER, FORMERLY KNOWN AS CINDI R. JAHNKE, APPELLEE.

Filed July 9, 2024.    No. A-23-659.

Appeal from the District Court for Douglas County: TRESSA M. ALIOTH, Judge. Reversed and remanded with directions.

Justin A. Quinn for appellant.

Michael W. Milone and Wendy A. Wussow, of Koukol, Johnson, Schmit & Milone, L.L.C., for appellee.

MOORE and ARTERBURN, Judges.

ARTERBURN, Judge.

INTRODUCTION

Cindi R. Piper (Cindi), formerly known as Cindi R. Jahnke, filed for divorce from Jeremiah C. Jahnke (Jeremiah) in the Douglas County District Court. Jeremiah was personally served but failed to file a responsive pleading. Subsequently, the district court granted default judgment in favor of Cindi and entered a decree of dissolution. Seven days later, Jeremiah retained counsel and filed three motions: (1) a motion for a new trial and/or a motion to reconsider, (2) a motion to vacate judgment, and (3) a motion to allow an answer out of time. After a hearing, the court denied Jeremiah's motions and awarded Cindi attorney fees. Jeremiah appeals. Upon our review, we find that the district court erred in denying Jeremiah's motion to vacate the default judgment. We reverse and remand with directions.

BACKGROUND

Jeremiah and Cindi were married in Las Vegas, Nevada, in 1997. On January 3, 2023, Cindi filed for divorce. The next day, Jeremiah was personally served with Cindi's complaint and a summons. In February 2023, as a self-represented litigant, Jeremiah registered his email address with the district court. However, Jeremiah did not file an answer or any other responsive pleading. Consequently, in April 2023, Cindi filed a motion for default judgment.

In May 2023, the court held a hearing on Cindi's motion. Our record of that proceeding begins with a statement from the district court that Jeremiah had appeared and engaged in an off-the-record discussion with the court about the case. The court stated that Jeremiah then "chose to absent himself from the proceedings."

After Jeremiah left the courtroom, the hearing continued. Cindi was the sole witness to testify. Despite her attempts to repair the marriage, Cindi believed the marriage was irretrievably broken. She testified that she and Jeremiah did not share any minor children and that she was not seeking alimony.

A large portion of Cindi's testimony focused on five parcels of real property she inherited from her mother in 2001. Cindi testified that four of the five parcels were currently occupied by either herself or her family members. There was no evidence that Jeremiah had any claim to or interest in these parcels. However, the fifth parcel (hereafter referred to as the 6733 property) was where Jeremiah and Cindi resided for most of their marriage. Prior to her mother's death, Cindi had some ownership interest in the 6733 property. A third party conveyed the property to Cindi and her mother in 1997. When Cindi inherited her mother's interest in 2001, she became the sole owner of the 6733 property.

In the same year, Cindi executed a quitclaim deed conveying the 6733 property to Jeremiah and herself as joint tenants. Cindi testified that the conveyance was an attempt to save the marriage. She explained that prior to the conveyance, she had filed for divorce from Jeremiah. However, she and Jeremiah agreed that if Jeremiah attended addiction therapy, anger management, and marriage counseling, she would stop pursuing a divorce and put his name on the property's deed. Cindi testified that while she fulfilled her obligations, Jeremiah did not reciprocate. Consequently, Cindi stated that she never meant to give Jeremiah a 50 percent interest in or equity in the property.

Cindi further testified that in 2017, Jeremiah changed the locks on the marital home, effectively excluding her from the 6733 property. Jeremiah did not allow Cindi to remove any of her personal possessions from the home. Additionally, Jeremiah did not pay Cindi rent to stay in the home, but from 2017 to 2021, he paid the real estate taxes for the property. He did not pay the 2022 real estate taxes. As a result, a tax lien was placed on the property.

Following their separation, Jeremiah informed Cindi that he was in love with someone else and wanted a divorce. Cindi testified that they originally "agreed on hiring one attorney" to pursue a divorce. However, the separation soon became contentious, and their attempts to divorce amicably failed.

Cindi asked the court to award her the five parcels free and clear of any claims of interest from Jeremiah, hold Jeremiah responsible for the outstanding taxes on the 6733 property, order Jeremiah to reimburse her for any damage he inflicted on the 6733 property, and order him to return her personal possessions left in the home. Cindi requested that all other real or personal

properties not specifically discussed be awarded to whomever currently possessed the properties. She also asked the court to restore her maiden name and award her attorney fees.

On May 12, 2023, the court issued a default decree of dissolution. The court found that Jeremiah had defaulted, dissolved the marriage, and granted all of Cindi's requests with respect to property division. Thus, Cindi was awarded all five parcels of real property free and clear of any claims of interest by Jeremiah. Jeremiah was found to be solely responsible for the tax lien on the 6733 property and was ordered to return or reimburse Cindi for the personal property that she left in the marital home. The court also restored Cindi's maiden name and ordered Jeremiah to pay half of her attorney fees.

Seven days after the dissolution decree was entered, Jeremiah, now represented by counsel, filed three motions for post-judgment relief. He filed a motion for a new trial and/or a motion to reconsider, a motion to vacate the default judgment, and a motion to allow an answer out of time. On June 15, 2023, a hearing was held on these motions. Jeremiah alleged that the decree contained errors and requested that the court correct them. Specifically, he alleged that the 6733 property in which he lived and which Cindi had quitclaimed to herself and him in 2001 was marital property and should be divided as such.

In an affidavit received at the hearing on his motions, Jeremiah asserted that before Cindi inherited her mother's interest in the 6733 property, he and Cindi had agreed to purchase it together. Jeremiah claimed that he and Cindi sold their former Papillion residence in which they both had an interest and used the proceeds for the purchase of the 6733 property. He maintained that he and Cindi endorsed the check they received from the Papillion sale to Cindi's mother. However, Cindi's mother died before the sale could be completed. Instead of filing a quiet title action against the estate, Jeremiah and Cindi permitted Cindi to inherit the property in accordance with her mother's will. Once Cindi became the sole owner, she honored their purchase of the 6733 property by executing a quitclaim deed transferring ownership to herself and Jeremiah as joint tenants. Thus, Jeremiah argued that the 6733 property was marital property and should be sold with the equity divided equally amongst the parties.

Jeremiah also noted that the deed executed by Cindi quitclaiming her interest in the marital residence to herself and Jeremiah jointly occurred 3 years prior to Cindi's filing for divorce in 2004. He asserted that this time disparity called into question Cindi's contention that she executed the deed in an effort to save the parties' marriage after filing for divorce.

Jeremiah further contended that when he arrived at the default hearing, he believed that he and Cindi had agreed to hire one attorney for the matter, sell the marital home, and divide the proceeds. He did not expect Cindi to claim full ownership of the 6733 property, and he did not believe he had to defend against this action. Jeremiah cited to an attached text message exchange between himself and Cindi wherein they attempted to negotiate a value for the marital residence and a resolution of who would purchase the other person's interest in the residence. Jeremiah admitted that while he should have filed an answer, he only defaulted because he expected the matter to be resolved amicably. Jeremiah demonstrated by virtue of his affidavit and the attachments thereto that he had paid the 2022 taxes on the marital residence and the attorney fees ordered by the court in the decree of dissolution.

Cindi filed a verified response and denied that any agreement was made between the parties regarding the disposition of the 6733 property. She claimed that she owned the Papillion property

before marrying Jeremiah and that she never used the proceeds to purchase the 6733 property. She also denied that the check from the Papillion residence was endorsed to her mother. Instead, Cindi asserted that the money was deposited into a bank account that was jointly owned by herself and her mother. Cindi concluded that Jeremiah knowingly and voluntarily failed to assert his rights in a timely manner and requested that the court deny his motions. She also sought attorney fees.

After the motions were submitted, the court made the following statement:

The Court does recall, . . .[that] the record is devoid of the conversation this Court had with [Jeremiah] the morning he was here, and I discussed with him whether or not he had filed an answer. He advised he did not. Whether or not he intended to file an answer, he advised he did not and said that he was here to proceed with what agreement was there. He was advised by the Court, without him having filed anything, the matter was set for a default. He could stay, but the matter was set for a default. He chose at that point to leave, and . . . said he would file a nunc pro tunc as he rudely exited the Court's door, making quite a bit of racket.

Subsequently, in its August 2, 2023, order, the court denied Jeremiah's motions and awarded Cindi additional attorney fees. The court found that Jeremiah failed to hire counsel, file an answer, or ask for a continuance before or at the default hearing. The court indicated that Jeremiah only sought to exercise his rights after the default decree of dissolution was entered. The court concluded that the default judgment was entered due to Jeremiah's faults or failures. Additionally, the court found that Jeremiah's motions were essentially identical and held that he failed to prove that he had a meritorious claim.

On August 24, 2023, Jeremiah timely filed his notice of appeal.

ASSIGNMENTS OF ERROR

Jeremiah assigns, summarized and restated, that the district court erred in (1) denying his motions for a new trial and to vacate and set aside the decree entered pursuant to the default judgment, and (2) awarding Cindi attorney fees incurred from the hearing on his post-judgment motions.

STANDARD OF REVIEW

A jurisdictional question which does not involve a factual dispute is determined by an appellate court as a matter of law. *McPherson v. Walgreens Boot Alliance*, 314 Neb. 875, 993 N.W.2d 679 (2023).

Whether default judgment should be entered because of a party's failure to timely respond to a petition rests within the discretion of the trial court, and an abuse of discretion must affirmatively appear to justify a reversal on such a ground. *Buttercase v. Davis*, 313 Neb. 1, 982 N.W.2d 240 (2022), *modified on denial of rehearing* 313 Neb. 587, 985 N.W.2d 588 (2023). An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Id.*

A court's decision awarding or denying attorney fees will be upheld absent an abuse of discretion. *Sellers v. Reefer Systems*, 305 Neb. 868, 943 N.W.2d 275 (2020).

ANALYSIS

Jeremiah appeals from the district court's order denying his motions for a new trial and to vacate the default judgment and the order granting Cindi attorney fees related to his motions. In her appellate brief, Cindi questions whether this court has jurisdiction to hear Jeremiah's appeal. We address each issue in turn.

*Jurisdictional Question.*

Before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it. *Mathiesen v. Kellogg*, 315 Neb. 840, 1 N.W.3d 888 (2024). For an appellate court to acquire jurisdiction of an appeal, the party must be appealing from a final order or a judgment. *Id.* See also Neb. Rev. Stat. § 25-1911 (Reissue 2016). Under Neb. Rev. Stat. § 25-1902 (Cum. Supp. 2022), an order is final for purposes of appeal if it (1) affects a substantial right and in effect determines the action and prevents a judgment, (2) affects a substantial right and is made during a special proceeding, (3) affects a substantial right and is made on summary application in an action after a judgment is rendered, or (4) denies a motion for summary judgment which was based on the assertion of sovereign immunity or the immunity of a government official. The Nebraska Supreme Court has consistently held that an order overruling a motion to vacate or set aside a default judgment is final and appealable. See *Porter v. Porter*, 309 Neb. 167, 959 N.W.2d 235 (2021). Under Neb. Rev. Stat. § 25-1912 (Cum. Supp. 2022), a party must file a notice of appeal within 30 days of the judgment, decree, or final order from which the party is appealing. *Bryson L. v. Izabella L.*, 302 Neb. 145, 921 N.W.2d 829 (2019).

In the district court, Jeremiah filed a motion for a new trial and/or a motion to reconsider, a motion to vacate the judgment, and a motion to allow an answer out of time. A motion for reconsideration is nothing more than an invitation to the court to consider exercising its inherent power to vacate or modify its own judgment. *Bryson L. v. Izabella L., supra*. In the absence of an applicable rule to the contrary, a motion asking the court to exercise its inherent power to vacate or modify its own judgment does not terminate the time for taking an appeal. *Id.* A party can move the court to vacate or modify a final order, but if the court does not grant the motion, a notice of appeal must be filed within 30 days of the entry of the earlier final order if the party intends to appeal it. *Id.*

However, an appellate court reviews a post-judgment motion based on the relief it seeks, rather than its title. *Clarke v. First Nat. Bank of Omaha*, 296 Neb. 632, 895 N.W.2d 284 (2017). If the post-judgment motion seeks a substantive alteration of the judgment, as opposed to the correction of clerical errors or relief wholly collateral to the judgment, a court may treat the motion as one to alter or amend the judgment. *Id.* Under Neb. Rev. Stat. § 25-1329 (Reissue 2016), a motion to alter or amend a judgment must be filed no later than 10 days after the entry of judgment. A timely motion to alter or amend terminates the time to file an appeal, and the full 30-day period to appeal begins to run from the entry of the order ruling upon the motion to alter or amend a judgment. *Bryson L. v. Izabella L., supra*. Under these circumstances, motions titled as motions to vacate or motions for new trials have been treated as motions to alter or amend. See, *Bryson L. v. Izabella L., supra* (motion to vacate); *Clarke v. First Nat. Bank of Omaha, supra* (motion for new trial).

The district court found that Jeremiah's post-judgment motions were virtually identical. We agree. Each motion requested the same type of relief: a substantive alteration of the district court's default decree of dissolution. Jeremiah requested that the court either vacate the default judgment and grant a new trial or "reform [the decree] to indicate that the [6733 property] be sold with the proceeds divided evenly between the parties after real estate commission, seller incentives and agreed repair reimbursed." Thus, these motions qualified as motions to alter or amend and terminated the original appeal time. Jeremiah had 30 days from the entry of the August 2, 2023, order to appeal. He filed his notice of appeal on August 24, 2023. Therefore, we have jurisdiction over this appeal.

*Order Denying Motion to Vacate Default Judgment.*

Jeremiah argues that the district court abused its discretion in failing to vacate the default judgment and order a new trial.

Generally, when the court has entered a default judgment and the defendant has made a prompt application at the same term to set it aside, with the tender of an answer or other proof disclosing a meritorious defense, the court should on reasonable terms sustain the motion and permit the cause to be heard on the merits. *Carrel v. Serco Inc.*, 291 Neb. 61, 864 N.W.2d 236 (2015). When determining whether to set aside a default judgment, two competing interests must be considered: the right of a litigant to defend the action on the merits and judicial efficiency. *Id.* The law favors allowing a defendant to present a defense to the court. *Id.*

In this case, 7 days after default judgment was entered, Jeremiah retained counsel and filed three post-judgment motions requesting that the court set aside its default decree and grant a new trial. We note that while our record is incomplete, it nonetheless indicates that Jeremiah's failure to participate in the default judgment hearing was due in large part to his belief that he and Cindi had agreed to use one attorney for the divorce, sell the marital home, and divide the proceeds. When he arrived at the hearing and discovered that was not the case, he left, retained counsel, and promptly motioned the court to vacate the default judgment.

Jeremiah also raised a meritorious defense. A meritorious defense is one which is worthy of judicial inquiry because it raises a question of law deserving some investigation and discussion or a real controversy as to the essential facts. *Carrel v. Serco Inc., supra*. Although a defendant seeking to vacate a default judgment is required to present a meritorious defense, it is not required that the defendant show he will ultimately prevail in the action, but only that the defendant show that he has a defense which is recognized by the law and is not frivolous. *Id.*

Jeremiah's meritorious defense concerns the exclusion of the 6733 property from the marital estate. The Supreme Court has stated that the manner in which property is titled or transferred by the parties during the marriage does not restrict the trial court's determination of how the property will be divided in an action for dissolution of marriage. *Schuman v. Schuman*, 265 Neb. 459, 658 N.W.2d 30 (2003). As a general rule, all property accumulated and acquired by either spouse during the marriage is part of the marital estate, unless it falls within an exception to the general rule. *Id.* For example, gifts and inheritances, even when received during the marriage, are presumed to be nonmarital. *Burgardt v. Burgardt*, 304 Neb. 356, 934 N.W.2d 488 (2019).

Nevertheless, that presumption may be overcome. How property inherited by a party before or during the marriage will be considered in determining the division of property must depend

upon the facts of the particular case and the equities involved. *Schuman v. Schuman, supra.* This Court has stated that a previously nonmarital asset that is jointly titled during marriage can be classified as either marital or nonmarital depending on the circumstances of the case. *Bowen v. Bowen*, 29 Neb. App. 726, 959 N.W.2d 282 (2021). The burden of proof rests with the party claiming that the property is nonmarital. *Karas v. Karas*, 314 Neb. 857, 993 N.W.2d 473 (2023).

Jeremiah's proffered evidence calls into question whether the 6733 property is Cindi's nonmarital property. He asserts that he contributed resources to the purchase of the property and that the 2001 quitclaim deed signed by Cindi is evidence of his interest. He argues that the 6733 property is indeed marital property which should be divided amongst the parties.

We acknowledge that this is a highly contested factual issue and that Cindi wholly rejects Jeremiah's version of events. But this is exactly the kind of controversy concerning essential facts that proves a need for judicial inquiry. Additionally, at this stage of the case, Jeremiah need not show he will prevail on this issue. He need only show that he has a nonfrivolous defense recognized by law. We conclude that he has shown as much. There is a genuine question of whether the 6733 property is marital property. Cindi testified that Jeremiah never had an interest in this property, but the quitclaim deed could suggest that there was an intent to convey an interest to him. As Cindi is the party claiming that the 6733 property is nonmarital, she has the burden of proof. A trial is necessary to resolve this issue.

The district court relied heavily on Jeremiah's negligence in reaching its decision. The court noted Jeremiah's failure to file a responsive pleading after being served. The court further noted that in its conversation with Jeremiah prior to the default hearing, Jeremiah did not ask for time to file an answer or hire an attorney. He also chose not to ask for a continuance or to stay for the actual hearing. Rather, it appears that Jeremiah angrily exited the courtroom vowing to file a motion nunc pro tunc. The court found that the default was Jeremiah's "own fault," citing *State on behalf of L.L.B. v. Hill*, 268 Neb. 355, 682 N.W.2d 709 (2004).

We in no way condone whatever unseemly behavior Jeremiah may have engaged in during the conversation prior to the default hearing. We further acknowledge the holding of the *State on behalf of L.L.B. v. Hill, supra*, case cited by the district court. In *Hill*, the Supreme Court restated the long-standing rule that for a litigant to be entitled to equitable relief from a judgment, a party must show that the situation is not due to his or her fault, neglect, or carelessness. But we further note that in *Hill*, the party seeking relief did not seek relief from a judgment of a court for a period of five years following its entry. Here, Jeremiah sought relief seven days following the entry of judgment.

We find this case to be much closer to *Carrel v. Serco Inc.*, 291 Neb. 61, 864 N.W.2d 236 (2015). There, the Supreme Court reversed an order granting default judgment to a plaintiff in a personal injury case where risk management personnel for an out of state corporation failed to recognize the need to hire counsel and file pleadings in a Nebraska lawsuit. When corporate counsel received notice of the default judgment, local counsel was immediately hired and a motion to set aside the default judgment was filed. Applying the rules cited above, the Supreme Court found that even though errors had been made by the defendant's employees, a meritorious defense nonetheless existed which the defendant should have been allowed to assert.

Here, while we recognize Jeremiah's negligence, we also note that once judgment was entered, Jeremiah acted expeditiously in seeking relief. His defense with respect to the

characterization of the parties' interests in the marital residence raises a question of law deserving of investigation and full judicial inquiry. Jeremiah may or may not be successful at trial, but at this juncture he need not show that he would prevail. He need only show that he has a defense which is recognized by the law and is not frivolous. Jeremiah has met that burden here.

Therefore, we cannot find that interests of judicial efficiency overcome Jeremiah's interests in presenting a defense on this issue. Although Jeremiah failed to file an answer, this case was only 4 months old when the district court granted default judgment. Jeremiah's immediate response to said judgment was to hire an attorney who promptly filed appropriate post-judgment motions.

For the foregoing reasons, we conclude that the district court abused its discretion in denying Jeremiah's motion to vacate the default judgment.

*Order Granting Cindi Attorney Fees.*

Jeremiah does not contest Cindi's first award of attorney fees relating to the default judgment hearing. Jeremiah does, however, argue that the district court abused its discretion in awarding Cindi attorney fees relating to his post-judgment motions.

In a marital dissolution action, an award of attorney fees depends on a variety of factors, including the amount of property and alimony awarded, the earning capacity of the parties, and the general equities of the situation. *Molczyk v. Molczyk*, 285 Neb. 96, 825 N.W.2d 435 (2013). We find that because Jeremiah raised a meritorious defense and Cindi's second attorney fee award was based on a judgment we are reversing, this award must also be reversed.

## CONCLUSION

The district court abused its discretion in denying Jeremiah's motions which sought to set aside the default judgment. Jeremiah raised a meritorious defense, and the cause should be heard on the merits. Additionally, the district court abused its discretion in awarding Cindi attorney fees. We reverse and remand the cause with directions to the district court to vacate the default decree of dissolution and permit Jeremiah to file a responsive pleading. We also reverse the portion of the judgment awarding Cindi attorney fees related to Jeremiah's post-judgment motions.

REVERSED AND REMANDED WITH DIRECTIONS.

WELCH, Judge, participating on briefs.